KUEHNER ET AL., TRUSTEES, *v.* IRVING TRUST CO., TRUSTEE IN BANKRUPTCY, ET AL.

No. 354.   Argued December 15, 1936.—Decided January 4, 1937.

*Mr. Rollin Browne,* with whom *Mr. Henry L. Glenn* was on the brief, for petitioners.

*Mr. William D. Whitney,* with whom *Mr. R. L. Gilpatric* was on the brief, for the Irving Trust Co., Trustee, respondent.

*Messrs. Sanford H. E. Freund, Winthrop H. Kellogg,* and *Douglas B. Steimle* were on the brief for the Preferred Stockholders' Protective Committee, respondent.

By leave of Court, *Messrs. M. Carl Levine* and *David Morgulas* filed a brief on behalf of the Jacob Ruppert Realty Corporation, as *amicus curiae,* urging reversal of the decision below.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

In this case we are concerned with that portion of subsection (b) (10) of § 77B of the Bankruptcy Act which limits the claim of a landlord for indemnity under a covenant in a lease to an amount not to exceed three years' rent.

The questions are: (1) Is the claim so limited in all events and for all purposes or is the surplus over the specified amount, though subordinated to the claims of other creditors, to have priority over the interests of stockholders or to be reserved as a liability of the reorganized corporation? (2) If the claim is limited in all events to the named amount, is the provision obnoxious to the Fifth Amendment of the Constitution?

The petitioners leased real estate to United Cigar Stores Company in 1926 for a term expiring in 1946. August 29, 1932, the company was adjudicated a voluntary bankrupt. November 14, 1932, the trustee rejected the lease and abandoned the premises. The following day the petitioners reëntered and terminated the leasehold in accordance with the provisions of the lease which contained a covenant by the lessee to indemnify them against all loss of rent from such termination. Immediately upon adoption of § 77B the bankrupt filed its petition for reorganization thereunder, which was approved by the court.

The petitioners presented a proof of claim, measuring the injury resulting from the termination of the leasehold by the difference between the rental value and the value of the rent reserved for the remainder of the term. They prayed that the amount claimed be ranked on a parity with other provable debts to the extent of three years' rent and, as to the balance, be subordinated to other provable debts but awarded priority over the claims or inter-

ests of the debtor's stockholders. The trustee asked that
the allowance be in an amount limited as provided by the
statute. Committees representing preferred stockholders
and debenture holders objected to allowance of the claim
in any amount, asserting the petitioners could not sue on
the covenant of indemnity under the state law until the
expiration of the term and, having no presently enforce-
able claim under state law, had none in the reorganization
proceeding. The petitioners amended their pleading by
adding a prayer that to the extent any portion of the claim
might be held not allowable a charge be reserved against
the debtor's assets for such portion in priority to any
interest accorded stockholders.

The uncontroverted testimony is that the fair rental
value for the balance of the term is $111,545.36. The fu-
ture instalments of rent to the end of the term aggregate
$199,237.66. A special master recommended that the pe-
titioners' claim be allowed and liquidated at the amount
of the difference between present rental value and pres-
ent value of the rent reserved. He found that the sum
so ascertained would be not less than the equivalent of
three years' rent and recommended allowance of the claim
on a parity with provable debts to the extent of three
years' rent,—$44,377.55,—and the reservation of all
questions as to the balance until the time for classifica-
tion of creditors and consideration of a reorganization
plan. The District Court confirmed the master's report
save that it decided the claim as allowed should represent
the extent of claimants' right to participate in the pro-
ceedings. Cross appeals were taken to the Circuit Court
of Appeals, which held that petitioners had a provable
claim, that the method adopted for the liquidation of the
claim was proper, that § 77B required limitation of al-
lowance to a sum not in excess of the three years' rent
mentioned in the statute and that such limitation does
not take petitioners' property without due process of law

in violation of the Fifth Amendment.[1]  We granted certiorari because of the importance of the questions involved.

The respondent Stockholders' Committee does not now deny that the petitioners have a provable claim but joins the trustee in support of the decision below that the allowance must be limited for all purposes of the proceeding to three years' rent.

We have held in *City Bank Farmers Trust Co.* v. *Irving Trust Co.,* [2] *ante,* p. 433, that the broad definition of creditors in § 77B gives the petitioners a provable claim for breach of the debtor's covenant of indemnity.  The section, however, limits the amount for which such a claim may be allowed.  The relevant provision, so far as applicable to petitioners' claim is:

"The claim of a landlord . . . for . . . indemnity under a covenant contained in such lease shall be treated as a claim ranking on a parity with debts which would be provable under section 63 (a) of this Act, but shall be limited to an amount not to exceed the rent, without acceleration, reserved by said lease for the three years next succeeding . . . the date of reëntry of the landlord, . . ."

The legislative history of this provision, and the successive alterations of its wording in both houses of Congress and in conference, to which we are referred, cannot affect its interpretation, since the language of the act as adopted is clear.  The only phrase to which petitioners point in support of their contention that the claim is to be divided into two parts, one for an amount not exceeding three years' rent, to stand on a parity with other provable claims, and the other, representing the balance, to be subordinated to creditors' claims, but preferred to the interest of stockholders, is: "shall be treated as a claim

---

[1] 85 F. (2d) 35.

[2] No. 260, decided this day.

ranking on a parity with debts which would be provable under section 63 (a)." We need not consider the suggestion that the words "on a parity" were left in the clause *per incuriam* when formulation of an earlier draft was altered, since, in our opinion, their presence however they came to be inserted, cannot overcome the direct mandate that "the claim . . . shall be limited." We agree, therefore, with the Circuit Court of Appeals that if, upon liquidation by deduction of present rental value from the present value of rent reserved, the difference exceeds the amount of the total rent for the three years succeeding the landlord's reëntry, the claim may be allowed only for that amount.

A more serious question is raised by the petitioners' insistence that thus applied the act exceeds legislative powers granted and infringes personal guaranties given by the Constitution. They say that the prescribed method will in some instances limit the amount allowed to a figure less than the landlord's actual ultimate loss, and thus partially destroy his remedy for enforcement of his contract. The resulting violations of the Constitution, they assert, are the transgression of the boundaries of the bankruptcy power vested in Congress, and the taking of their property without due process.

Is the enactment in excess of the power to legislate on the subject of bankruptcies, conferred upon Congress by Art. I, § 8, of the Constitution? Congress evidently considered the limitation imposed on claims of this class necessary or advantageous to a successful reorganization and its judgment is conclusive upon us, if the enactment is within its power.

The petitioners concede Congress has power to exclude contingent claims from proof and allowance so long as the obligations they represent are not extinguished by the statute.[3] They refer, however, to the statement in *Louis-*

---

[3] Compare *Manhattan Properties, Inc.* v. *Irving Trust Co.,* 291 U. S. 320, 332.

*ville Joint Stock Land Bank* v. *Radford,* 295 U. S. 555, that Congress has never attempted to supply a bankrupt with capital to engage in business at the expense of his creditors, as persuasive that a statute cannot discharge a bankrupt's assets from liability for his debts but can only discharge the bankrupt from encumbrances on his future exertions.[4] This principle, they assert, the statute violates. The short answer is that the object of bankruptcy laws is the equitable distribution of the debtor's assets amongst his creditors;[5] and the validity of the challenged provision must be tested by its appropriateness to that end. Congress, in determining what such an equitable distribution demands, is free to establish standards of provability and measures of allowance regardless of the claimant's ability to maintain an action in a court or the measure of his recovery in such an action if maintainable. The contested provision is within the power of Congress. The exercise of the power is, nevertheless, subject to the commands of the Fifth Amendment.[6]

Does the Act offend the due process guaranty by destruction of rights conferred by the petitioners' contract? They affirm that it does, not merely by impairing those rights but by a direct taking *pro tanto* of all remedies for their enforcement and, to that extent, of the contract itself. Conceding they have no lien upon, or property right in, the debtor's assets, such as was the subject of decision in *Louisville Joint Stock Land Bank* v. *Radford, supra,* they maintain that the Fifth Amendment assures them some effective procedure for the enforcement of the obligation of their contract; that the debtor's assets are a trust fund for creditors which cannot be invaded for the benefit of stockholders. As pointed out in the case last cited there is, as respects the exertion of the bankruptcy

---

[4] See *Hanover National Bank* v. *Moyses,* 186 U. S. 181, 188.

[5] *Kothe* v. *R. C. Taylor Trust,* 280 U. S. 224, 227.

[6] *Louisville Joint Stock Land Bank* v. *Radford, supra,* p. 589.

power, a significant difference between a property interest and a contract, since the Constitution does not forbid impairment of the obligation of the latter. The equitable distribution of the bankrupt's assets, or the equitable adjustment of creditors' claims in respect of those assets, by way of reorganization, may therefore be regulated by a bankruptcy law which impairs the obligation of the debtor's contracts. Indeed every bankruptcy act avowedly works such impairment. While, therefore, the Fifth Amendment forbids the destruction of a contract it does not prohibit bankruptcy legislation affecting the creditor's remedy for its enforcement against the debtor's assets, or the measure of the creditor's participation therein, if the statutory provisions are consonant with a fair, reasonable, and equitable distribution of those assets. The law under consideration recognizes the petitioners' claim and permits it to share in the consideration to be distributed in reorganization. The question is whether the remedy is circumscribed in so unreasonable and arbitrary a way as to deny due process.

Bankruptcy originated as a seizure of the debtor's assets for equitable distribution amongst creditors. It was akin to a taking in execution. The concept was subsequently broadened to embrace the discharge of the embarrassed debtor from antecedent debts and to make the process available at his instance as well as at that of his creditors. Claims not provable, since they did not participate in the avails of the bankrupt's assets, were not discharged but remained recoverable by action against the discharged bankrupt. The object of § 77B was to extend the system to permit and facilitate the reorganization of certain types of insolvent or embarrassed business corporations. The theory of the legislation is that the extension will serve the interests of the public, the creditors, and the shareholders.

If the bankruptcy act was to be broadened to embrace reorganization of corporate debtors the wisdom of relieving them of continuing liability for rent or under contracts of indemnity was apparent. And if the landlords' claims were to be discharged in the reorganization they must be admitted to participation on an equitable basis with other claims in shaping the reorganization and in distribution of that which is to go to creditors pursuant to any plan adopted. The section therefore made such claims provable. Its legislative history attests the diverse views entertained in Congress as to the amount for which a claim should be allowed. Only after mature deliberation was the limit set at the amount fixed in the act. The reasonableness of the limitation is to be determined in the light of all circumstances Congress might properly consider.

In *City Bank Farmers Trust Co.* v. *Irving Trust Co., ante,* p. 433, the peculiar and unfortunate status of landlords' claims under the Bankruptcy Act of 1898 is described. The tenant's bankruptcy removed all his assets from the reach of the landlord and left, as the latter's only remedy, suits against an empty corporate shell or a destitute individual. In framing the reorganization statute Congress obviously attempted to award landlords an equitable share in the debtor's assets as, in justice, it was bound to do since the purpose was to discharge the debtor from liability to future suits based upon the lease. It is incorrect to say that Congress took away all remedy under the lease. On the contrary, it gave a new and more certain remedy for a limited amount, in lieu of an old remedy inefficient and uncertain in its result. This is certainly not the taking of the landlord's property without due process.

But we are told that if Congress determined to admit landlords' claims to a share in debtors' assets it was

bound by the Fifth Amendment not to be arbitrary in the allotment of such share or to discriminate between landlords and other creditors and between individual landlords. We cannot pronounce the limit set upon petitioners' claim arbitrary or unreasonable. It is well known that leases of business properties, particularly retail business properties, commonly run for long terms. The longer the term the greater the uncertainty as to the loss entailed by abrogation of the lease. Testimony as to present rental value partakes largely of the character of prophesy and, although that value is the cardinal factor in the measure of damages for which petitioners contend, it is obvious that, since the landlord is not bound to relet the premises for the unexpired term of the lease, that factor may have little real bearing upon the realities of the case. And, in any event, the possibility of the landlord's using the premises for his own purposes, their sale, their condemnation for public use, or their loss by foreclosure, renders an estimate of present rental value highly uncertain. Add to this the fact that bankruptcies multiply in hard times, and that estimates of rental value are made upon the basis of what a new tenant will pay in an era of economic depression, and the estimate becomes even more unreliable. Whatever courts, in the absence of a statutory formula, might feel compelled to adopt as the measure of damage in such a case, we cannot hold that Congress could not reasonably find that an award of the full difference between rental value and rent reserved for the remainder of the term smacks too much of speculation and that a uniform limit upon landlords' claims will, in the long run, be fair to them, to other creditors, and to the debtor.

The petitioners insist that the amount to which the claim must be limited has no reasonable relation to the facts; that a sum equal to three times the annual rent can have no relation to the probable loss by the ending

of the leasehold. But the rent reserved, broadly speaking, has some relationship to the value of the property and the value of a lease thereon. What the statute does, is to assure at least three full years' rent to a landlord whose possible loss may exceed that amount, evidently upon the theory that with such an allowance the landlord stands a reasonable chance of restoring himself to as good a position as if the lease had not been terminated.

The petitioners say that by limiting their claim they are put upon a different basis from other creditors. A sufficient ground for the distinction is that petitioners get back their property. In other words, they have lost merely a bargain for the use of real estate, whereas merchandise creditors, lenders, and others, recover in specie none of the property or money which passed from them to the debtor.

Finally, it is said that the statute is whimsical and arbitrary in that the limit fixed upon landlords' claims necessarily represents a varying proportion of the actual loss of individual landlords and that this is discrimination of the most obvious sort. If, however, the statute does not deal unfairly with the petitioners it does not lie in their mouths to object because someone else perchance will receive a larger proportion of his ultimate loss as the same is ascertained years hence than will the petitioners. Congress, not unreasonably, felt that it was necessary, in the interest of expedition of proof and allowance of landlords' claims, which had never theretofore been permitted to share in a bankrupt debtor's assets, to fix a reasonable limit upon such claims. Naturally the amount fixed cannot bear the same relation to the ultimate loss or damage in every case. But it does not follow that, for this reason, all effort at uniformity of treatment of a peculiar class of claims, difficult of liquidation, is doomed to condemnation. All the arguments which petitioners submit would equally apply to any general and uniform formula

for the limitation of such claims which the Congress might adopt.  We are unable to say that that which Congress did select so discriminates between individual claimants to the detriment of the petitioners as to render it unconstitutional as to them.

The judgment is

*Affirmed.*

MR. JUSTICE BRANDEIS and MR. JUSTICE STONE took no part in the consideration or decision of this case.