In the Matter of: Edsel SCARBORO and Derrell L. Garnto, d/b/a Scarboro-Garnto Asphalt Company, Debtors

### ITT INDUSTRIAL CREDIT CORPORATION, Plaintiff

v.

### Edsel SCARBORO and Derrell L. Garnto, d/b/a Scarboro-Garnto Asphalt Company, Defendants.

Bankruptcy No. 79–01161.
Adversary Proceeding No. 80–0029.

United States Bankruptcy Court,
M. D. Georgia,
Macon Division.

Nov. 21, 1980.

Nolan B. Harmon and John M. Leiter, for plaintiff.

William M. Flatau, for trustee.

## MEMORANDUM DECISION ON APPLICATION FOR ALLOWANCE OF ATTORNEY'S FEES, COSTS, CHARGES AND INTEREST

### STATEMENT OF THE CASE

HENRY D. EVANS, Bankruptcy Judge.

On December 11, 1979 Phillip S. Garnto filed a petition in this Court seeking the involuntary liquidation of Scarboro-Garnto Asphalt Company, a partnership, under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701 et seq. On February 18, 1980

ITT Industrial Credit Company filed a complaint to modify the automatic stay requesting leave to foreclose on a John Deere front end loader, model number JD544–B (Wheel Loader), serial number 248570, in which it held a security interest. The matter came on to be heard on March 10, 1980, and in open Court the plaintiff was authorized to take possession of the property for the purpose of sale. The plaintiff was instructed to secure and file with the Court an appraisal of the property together with three bids. Apparently the property was to be sold to the highest of the three bidders following notice to interested parties and a ten day opportunity to object. On April 14, 1980 William M. Flatau was appointed interim trustee. On May 5, 1980 notice of the three bids and the time within which objections could be filed was given, and on May 10, 1980, ITT took possession of the loader for sale. On June 13, 1980 the sale was confirmed. On August 1, 1980 ITT filed an application for the allowance of compensation for attorney's fees, costs, charges and interest in connection with the sale of the loader and pursuant to Section 506(b) of the Bankruptcy Code, 11 U.S.C. § 506(b). William M. Flatau, as trustee of the estate, objected to the application on August 20, 1980 stating as his grounds for objection:

1. Failure of the applicant to give notice to the debtor of its intention to enforce its right to attorney's fees, required by Ga.Code Ann. § 20–506(c);

2. The application requested excessive fees in light of the language of the contract and the definition given "reasonable attorney's fees" by Ga. Code Ann. § 20–506(b);

3. The application sought remuneration for costs not contemplated by the contract between the parties;

4. That the contract between the parties predated the enactment of the Bankruptcy Code, and to allow attorney's fees pursuant to Section 506 of the Bankruptcy Code would impair the debtor's rights acquired under prior law in contravention of the Fifth Amendment of the Constitution of the United States.

Pursuant to 28 U.S.C. § 2403, the Attorney General was notified of the constitutional question and given an opportunity to intervene, but declined.

The matter came on regularly to be heard on Monday, October 22, 1980, and upon stipulation of counsel the Court makes the following:

### FINDINGS OF FACT

The contract upon which this dispute is centered was executed by Georgia residents, in Georgia, calling for performance within the State of Georgia. It was executed on August 22, 1977. In pertinent part it reads:

"In addition, Buyer [Edsel Scarboro & Derrell L. Garnto, d/b/a Scarboro-Garnto Asphalt Co.] agrees that, in the event this contract is referred to an attorney not a salaried employee of the holder of the contract, for collection, Buyer will pay reasonable attorney's fees plus court costs if any."

ITT never notified the debtor or the trustee of its intent to enforce the stipulation concerning attorney's fees, although ten days notice of an intent to enforce the clause and an opportunity to pay the principal and accrued interest without the imposition of those fees is required as a prerequisite to enforceability under Ga.Code Ann. § 20–506.

### CONCLUSIONS OF LAW

Any decision of this Court construing legislation passed by Congress and within this Court's jurisdiction must be influenced by three important principles too well established to require citation. The first is that this Court must determine the intent of Congress. The second is that this Court must effectuate the institution of bankruptcy. The third is that, if possible, all statutes passed by Congress should be interpreted in such a way as to be constitutional. Guided by these three principles, this Court must ascertain what Congress intended in passing Section 506(b) of the Bankruptcy

Code, 11 U.S.C. § 506(b), and apply it constitutionally, if possible, to the instant situation.

■ 11 U.S.C. § 506(b) states:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

Analysis of the controversy before the Court in light of Section 506 of the Bankruptcy Code reveals two distinct questions:

1. What was the agreement of the parties with respect to attorney's fees in the contract under which the allowed secured claim of ITT arose; and

2. Is the agreement of the parties enforceable in this Court and in this matter, even if it is unenforceable pursuant to State law?

In other words, the decision of this Court can be broken into construction of the agreement and enforceability thereof. Construction will be treated first. Construction of contracts as to attorney's fees is a matter of state law. *National Acceptance Company v. Zusmann*, 379 F.2d 351 at 354 (5th Cir. 1967); *Matter of Delaney*, 534 F.2d 645 at 647 (5th Cir. 1976); *In re Morris*, 602 F.2d 826 (8th Cir. 1979). In Georgia, any contract such as the one before the Court has to incorporate the definition given "reasonable attorney's fees" by Ga.Code Ann. § 20–506(b). *Wright v. Union Central Life Ins. Co.*, 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490 (1938); *Home Bldg. & Loan Asso. v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934). The contract concerned did not stipulate any other state law, called for the payment of "reasonable attorney's fees," was executed by residents of Georgia, in Georgia, and contemplated performance in Georgia. The only definition that can be given the term "reasonable attorney's fees" used by the contract is that prescribed by the Georgia Code.

■ Enforceability, on the other hand, is an entirely different matter. While the validity and construction of contracts stipulating attorney's fees are determinable by state law, enforceability of the stipulations in such contracts is undeniably a matter of bankruptcy law as long as the property and parties concerned are properly before the Court. *In re Atlanta International Raceway, Inc.*, 513 F.2d 546 at 548 and 549 (5th Cir. 1975); *Matter of Delaney*, supra; *In re Morris*, supra.

The Supremacy Clause of the United States Constitution need not be cited in stating that a state statute will succumb in instances of conflict with federal statutes. Therefore, if Congress intended Section 506 of the Bankruptcy Code to apply in situations such as the one before the Court, contrary state law will be no barrier.

■ Looking to the Congressional Record for assistance, the intent of Congress is shown to be for the application of Section 506, notwithstanding contrary law. Cong. Rec. (September 28, 1978) P.H. 11095. As to the enforceability of contractual provisions or the modification of previously settled interests within prior contracts, it is well within the constitutional grant of bankruptcy power to Congress to statutorily effect such a change. Congress, unlike the states, operating under its constitutionally granted power is not forbidden to impair contracts. *Highland v. Russell Car & Snow Plow Co.*, 279 U.S. 253, 49 S.Ct. 314, 73 L.Ed. 688 (1929); *Home Bldg. & Loan Assoc. v. Blaisdell*, supra; *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 at 589–90, 55 S.Ct. 854 at 863, 79 L.Ed. 1593 (1935); *Kuehner v. Irving Trust Co.*, 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340 (1937); *Wright v. Central Life Ins. Co.*, supra; *Rodrock v. Security Indus. Bank*, 3 B.R. 629 at 632 (Bkrtcy.1980); *In re Hoops*, 3 B.R. 635 at 638 (Bkrtcy.1980); *In re Pierce*, 4 B.R. 671 at 673–74 (Bkrtcy.1980). It is the trustee's reliance on the last two decisions cited and the *Radford* decision contained therein that predicates the contest instanter. That reliance is misplaced since those decisions concern more substantial specific property interests rather than contractual obligations. As the United States Supreme Court put it in *Kuehner*, supra:

"Does the Act offend the due process guaranty by destruction of rights con-

ferred by the petitioners' contract? They affirm that it does, not merely by impairing those rights but by a direct taking pro tanto of all remedies for their enforcement and, to that extent, of the contract itself. Conceding they have no lien upon, or property right in, the debtor's assets, such as was the subject of decision in *Louisville Joint Stock Land Bank v. Radford*, supra, they maintain that the Fifth Amendment assures them some effective procedure for the enforcement of the obligation of their contract; that the debtor's assets are a trust fund for creditors which cannot be invaded for the benefit of stockholders. As pointed out in the case last cited there is, as respects the exertion of the bankruptcy power, a significant difference between a property interest and a contract, since the Constitution does not forbid impairment of the obligation of the latter. The equitable distribution of the bankrupt's assets, or the equitable adjustment of creditors' claims in respect of those assets, by way of reorganization, may therefore be regulated by a bankruptcy law which impairs the obligation of the debtor's contracts. Indeed every bankruptcy act avowedly works such impairment. While, therefore, the Fifth Amendment forbids the destruction of a contract it does not prohibit bankruptcy legislation affecting the creditor's remedy for its enforcement against the debtor's assets, or the measure of the creditor's participation therein, if the statutory provisions are consonant with a fair, reasonable, and equitable distribution of those assets. The law under consideration recognizes the petitioners' claim and permits it to share in the consideration to be distributed in reorganization. The question is whether the remedy is circumscribed in so unreasonable and arbitrary a way as to deny due process." 299 U.S. at 451–452, 57 S.Ct. at 301–304, 81 L.Ed. at 345–346.

■ Hence, it is the opinion of this Court that notwithstanding the fact that the notice provision prerequisite to enforceability of a clause concerning attorney's fees in a security instrument has not been given pursuant to Ga.Code Ann. § 20–506(c), the application before this Court may be enter-

tained, and the amounts provided by the agreement of the parties may be allowed pursuant to 11 U.S.C. § 506.

That leaves the Court with only one obligation and that is determining the allowance to be made.

■ Since the contract between the parties did not mention costs of litigation, the amounts set out in the applicant's schedule of fees pertaining to filing fees, court reporter and Xerox, travel expenses, etc. may not be allowed. Ga.Code Ann. § 20–506(b) states that allowable attorney's fees pursuant to the contract are: 15% of the first $500 of the principal and interest of the indebtedness and 10% of the excess. The amount of the allowed secured claim of the plaintiff, ITT Industrial Credit Company, is $16,710.31. The contract by its own terms states that the sale of the property involved should not be construed as a loan of money and that the time-price differential should not be construed as interest on a loan of money or the forebearance of debt. Hence, the Court concludes that a correct computation would be based on the amount of the claim so allowed. That would result in allowable attorney's fees of:

$$15\% \times 500.00 - 75.00$$
$$10\% \times 16,210.31 - \underline{1,621.03}$$
$$\text{Total fees} - 1,696.03$$