**In re Richard Joseph MARINSKI and Nancy Joy Marinski, Debtors.**

**Richard Joseph MARINSKI and Nancy Joy Marinski, Plaintiffs,**

**v.**

**FIRSTMARK FINANCE COMPANY, Defendant.**

**Bankruptcy No. 80–0363.**

United States Bankruptcy Court, N. D. Ohio, W. D.

Feb. 4, 1981.

Jeffrey D. Levy, Toledo, Ohio, for plaintiffs.

David L. Honold, Wasserman, Wasserman, Bryan & Landry, Toledo, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This case is under the Court's consideration upon the Complaint of the Debtors to Avoid the Lien of Firstmark Financial Corporation of Toledo. The action was brought pursuant to Section 522(f) of the Bankruptcy Code. Briefs were submitted by both parties in lieu of trial as the facts are undisputed.

## FACTS

The Court makes the following findings of fact:

1.) The Debtors, Plaintiffs herein, filed a joint petition for relief under Chapter 7 of Title 11 of the United States Code on May 23, 1980.

2.) On or about September 16, 1977, the Debtors borrowed One Thousand Two Hundred Fourteen and 67/100 Dollars ($1,214.67) in principal amount from the Defendant, Firstmark Financial Corporation of Toledo, Ohio, in consideration for which the Debtors executed a security agreement granting to the Defendant a security interest in certain household goods, listed in particular on the security agreement, and also in all household goods, furniture, appliances, and personal property of the Debtors.

3.) The security interest was properly perfected on September 21, 1977.

4.) The money borrowed from Firstmark by the Debtors does not represent any part of the purchase money of any of the articles covered in the security agreement which Debtors executed, and all of the articles so covered remain in the possession of the Debtors and their family.

## STATEMENT OF ISSUES

Firstmark raised in its answer four affirmative defenses; upon oral motion of the Defendant, the Fourth Affirmative Defense was withdrawn. The issues remaining, undisputed, are as follows:

1.) Is Section 522(f) of the Bankruptcy Code to be given prospective application only, or shall it also apply to security interests and liens created prior to the enactment of the Bankruptcy Reform Act of 1978?

2.) Does Section 2329.661 of the Ohio Revised Code invalidate the Debtors' cause of action under Section 522(f) of the Bankruptcy Code?

3.) Does retrospective application of Section 522(f) of the Bankruptcy Code to liens and security interests created prior to the enactment of the Bankruptcy Code constitute a taking of property without due process of law in violation of the Fifth Amendment of the United States Constitution?

Section 522(f) of the Bankruptcy Code provides as follows:

"Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor."

## DISCUSSIONS OF LAW

### *1.) RETROSPECTIVE OR PROSPECTIVE APPLICATION:*

The question of whether a statute is to operate prospectively only is one of legislative intent. *Hassett v. Welch*, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938), *United States Trust Company of New York v. State of New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977), reh. den. 431 U.S. 975, 97 S.Ct. 2942, 53 L.Ed.2d 1073 (1977). The concept of retroactivity has generally been pertinent to statutes establishing punishment for criminal acts, raising the Constitutionality of *ex post facto* laws.

The Court has been referred to the Savings Provision of the Bankruptcy Reform Act as standing for the proposition that only those security interests and liens which arise on or after the effective date of the Act are to be affected by Section 522(f). Section 403(a) of Title IV of the Bankruptcy Reform Act states:

"A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted."

The Savings Provision makes no mention, directly or indirectly, of liens and security interests created before the effective date of the Bankruptcy Reform Act, October 1, 1979. The plain meaning of the Savings Provision is, with respect to Section 522(f), regardless of when a security interest was taken or perfected, if a case is filed on or after October 1, 1979, the Bankruptcy Code, and not the Bankruptcy Act, applies. If a case was filed on September 30, 1979, or before, the Bankruptcy Act, and not the Bankruptcy Code, applies. The cases filed on October 1, 1979 will all affect debts created up to that time, yet the former Bankruptcy Law will not apply.

Therefore, Section 522(f) shall apply to all *cases* commenced on or after October 1, 1979, without consideration of when the debts to be affected by such filing arose. Since the Bankruptcy Code, and thus Section 522(f), apply to security interests created before October 1, 1979 in cases filed on or after that date, there is no compelling reason to give the *enactment* date of the Bankruptcy Reform Act any significance with respect to the application of Section 522(f). Further, in cases filed on or after October 1, 1979, security interests which arise between the date of enactment and the effective date are also subject to application of Section 522(f), as are all security interests which meet the requirements of that Section, regardless of when they arose. *In re Ambrose*, 4 B.R. 395, 6 B.C.D. 454 (Bkrtcy.N.D.Ohio 1980), *In re Fisher* 6 B.R. 206 (Bkrtcy.N.D.Ohio 1980).

### *2.) DOES SECTION 2329.661 OF THE OHIO REVISED CODE INVALIDATE DEBTORS' CAUSE OF ACTION UNDER SECTION 522(f)?*

Section 2329.661(C) of the Revised Code provides that "Section 2329.66 of the Revised Code does not affect or invalidate any sale, contract of sale, conditional sale, security interest, or pledge of any personal property, or any lien created thereby."

Section 2329.66(A)(4)(b) entitled the debtor to exempt, " * * * the person's interest, not to exceed $200.00 in any particular item, in household furnishings, household goods, appliances, * * * that are held primarily for the personal, family or household use of the person."

It is argued by the Defendant that since Ohio has elected to enact its own exemption laws in place of the federal exemptions provided for in Section 522(b) of the Bankruptcy Code, the proper interpretation of this apparent conflict must be resolved in favor of the Ohio provision which prohibits the debtor from invalidating a lien which the debtor otherwise would be empowered to avoid.

This interpretation of Section 2329.661 would effectively deny debtors domiciled in

Ohio the availability of Section 522(f) of the Bankruptcy Code to avoid certain liens. The question then must be whether in granting states the option to determine which exemptions debtors of that state would use, Congress also intended to permit state law to modify or pre-empt other substantive provisions of the bankruptcy law.

This Court thinks that clearly Congress had no such intention. No specific provision grants the states authority to pre-empt any subsection of Section 522 of the Code other than subsection (b), which are the exemptions. Thus, even if a state opts out of the federal exemptions, the debtor's lien avoidance power is not affected. *3 Collier on Bankruptcy* ¶ 522.29 (15th ed. 1979), *In re Cox*, 4 B.R. 240, 6 B.C.D. 434 (Bkrtcy.S.D. Ohio 1980).

Further, Section 2329.661 of the Ohio Revised Code would frustrate the operation of Section 522(f). While the State of Ohio must comply with Article I, Section 10 of the United States Constitution, which provides that no state shall enact a law impairing the obligation of contract, Congress is not so forbidden. *Kuehner v. Irving Trust Co.*, 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340 (1937). The power to impair contracts is implied in the Constitutional grant to Congress to enact uniform laws on bankruptcy (Art. I, Sec. 8, U. S. Constitution), *Kuehner*, supra, at 452, 57 S.Ct. at 302–303. Where a state statute conflicts with a federal statute, the federal statute must prevail. (Art. VI, Clause 2, U. S. Constitution), *Perez v. Campbell*, 402 U.S. 637, 652, 91 S.Ct. 1704, 1712–1713, 29 L.Ed.2d 233 (1971), *Moore v. Bay*, 284 U.S. 4, 5, 52 S.Ct. 3, 3–4, 76 L.Ed. 133 (1931).

Therefore, Section 2329.661 does not invalidate the Debtors' cause of action under Section 522(f) of the Bankruptcy Code.

### 3.) DOES RETROSPECTIVE APPLICATION OF SECTION 522(f) CONSTITUTE A TAKING OF PROPERTY WITHOUT DUE PROCESS OF LAW IN VIOLATION OF THE FIFTH AMENDMENT?

The Power of Congress to establish uniform laws of bankruptcy pursuant to Article I, Section 8 is subject to the due process requirements of the Fifth Amendment. The Defendant urges the Court to find that by allowing the Debtors to avoid the valid lien of the Defendant under Section 522(f) of the Bankruptcy Code, the Defendant will have been deprived a vested property right without due process, in violation of the Fifth Amendment.

In *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) (hereinafter *Radford*), the Supreme Court held that a violation of the Fifth Amendment Due Process Clause occurs when retrospective application of a bankruptcy statute destroys vested property rights. In that case, the constitutionality of the Frazier-Lemke Act was in issue. The debtor in *Radford* took advantage of Section 75 of the Bankruptcy Act as amended by the Frazier-Lemke Act of 1934. The Act provided that a farmer who had failed to obtain the requisite consents for a composition under Section 75 of the Bankruptcy Act could, upon being adjudged a bankrupt, acquire alternative options with respect to mortgaged property. The debtor in *Radford* took advantage of these provisions, and sought to stay all proceedings against his farm by the mortgagee bank for five years, during which time the debtor was to retain possession provided he paid a reasonable rental. At the end of the five years, or prior thereto, the debtor could purchase the property by paying into the court the appraised price of the property. The mortgagee bank refused to consent to the sale of the property to the debtor under the terms of the Frazier-Lemke Act.

The Supreme Court held that retrospective application of the Frazier-Lemke Act destroyed the bank's vested property rights and thus violated the Fifth Amendment. Two years later, the Supreme Court found constitutional and upheld a post-*Radford* amendment to the Frazier-Lemke Act which shortened the stay period for mortgagees from five to three years. *Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937).

The Supreme Court in the *Radford* case reiterated that the Constitutional grant of authority to Congress to make uniform bankruptcy laws is subject to the Due Process Clause of the Fifth Amendment, which protects vested property rights. Congress, however, is not prohibited from enacting legislation which impairs the obligation of contract, though the states clearly are so prohibited. *Article I, Section 10, United States Constitution.* "Indeed every bankruptcy act avowedly works such impairment. While, therefore, the Fifth Amendment forbids the destruction of a contract *it does not prohibit bankruptcy legislation affecting the creditor's remedy for its enforcement against the debtor's assets,* or the measure of the creditor's participation therein, *if the statutory provisions are consonant with a fair, reasonable, and equitable distribution of those assets.*" (emphasis supplied) *Kuehner, supra,* 299 U.S. 452, 57 S.Ct. 301–302.

The law in question in this case allows a debtor to avoid the lien of a creditor, if the lien is a judicial lien, or is a non-purchase money, non-possessory interest in household goods, tools of trade, or professionally prescribed health aids, *only to the extent that the debtor's exemption in such property is impaired by such lien.* 11 U.S.C. 522(f)(1), (2). Section 522(f) empowers the debtor to avoid such liens, notwithstanding any waiver of exemptions. The Defendant-creditor urges the Court to find that Section 522(f) is an unconstitutional denial of due process insofar as it authorizes destruction of the creditor's contracted-for interest in the debtor's property.

In addition to the basic presumption of constitutionality which is to be applied to every statute, there is the principle of construction that where the validity of a statute is attacked and there are two possible interpretations, by one of which the statute would be unconstitutional and by the other it would be valid, the court should adopt the construction which will uphold it, even though such a construction does not appear to be as natural as the other. (See cases cited at 16 Am.Jur.2d Section 145, p. 348 nn. 7, 8). Further, "a statute is constitutional or unconstitutional by reason of its scope and purpose and effect, and it is tested by a realistic consideration of the subject which it encompasses, the purpose which it seeks to serve, and the effect it will have when put in operation." 16 Am.Jur.2d Section 144.

Section 522(f), in this Court's view, is subject to two such possible interpretations. First, as the Defendant-creditor contends, it may be considered solely as the destruction of a vested property right without due process. Viewed this way, there is a clear violation of the Due Process Clause of the Fifth Amendment. Section 52(f) is also subject to interpretation as impairment of the obligation of contract, *incident* to which is the creditor's remedial property interest. If this interpretation can be sustained by analysis of the law and its purpose, and by balancing the interests affected, then it must be found by this Court to be a Constitutional exercise of legislative authority, absent, of course, arbitrariness and capriciousness. *Hanover National Bank v. Moyses,* 186 U.S. 181, 188, 22 S.Ct. 857, 860, 46 L.Ed. 1113 (1902).

Section 522(f) was enacted by Congress to protect the debtor's exemptions, his discharge, and thereby insure the debtor's fresh start. Ohio law regards the granting of a security interest by a debtor, in his property, to a creditor as a waiver of exemption of that property so far as that encumbrance is operative. *The Ohio Loan Co. v. Kletecka,* 47 Ohio App. 514, 192 N.E. 182 (1934), 23 *O.Jur.2d,* Sections 42, 44. Congress, however, by prefacing subsection (f) with the clear language, "Notwithstanding any waiver of exemptions * * *" sought to overcome this obstacle to the debtor's fresh start. Thus, while *states* must give effect to the impairment clause of the Constitution by construing security agreements as waivers of exemptions in the property covered therein, Congress is free of this restriction. In enacting Section

522(f), Congress maintained the purpose and policy behind exemption statutes, which is to allow a debtor to retain the necessities of life, keeping those goods out of the creditor's reach, thus preventing the debtor from becoming a public charge. *In re Perry*, 225 F.Supp. 481, 481–82 (N.D.Ohio 1963). For the debtor in bankruptcy, the need for lien avoidance power is conceivably greater than for the non-bankruptcy debtor because the bankruptcy debtor must deal with all of his creditors at once, while the non-bankruptcy debtor may face repossession by fewer than all of his creditors at any given time. Additionally, the debtor's lien avoidance power is limited to only the amount of the exemption, the limits of which have been set by the State of Ohio and further, this power only applies to judicial or non-purchase money, non-possessory liens. These limits further restrict the applicability of the lien avoidance power, and narrow its use and scope in bankruptcy proceedings.

Purchase money security interests in consumer goods in Ohio are automatically perfected, and take priority over other security interests. (Ohio Revised Code 1309.-21(A)(4)). The priority does not extend, however, to non-purchase money security interests, where the creditor takes a security interest in all household goods in which the debtor already has rights, to secure payment of a consumer loan.

With respect to the foregoing situation and the purpose of Section 522(f), the House of Representatives Report states:

"In addition, the bill gives the debtor certain rights not available under current law with respect to exempt property. The debtor may void any judicial lien on exempt property, and any nonpurchase money security interest in certain exempt property such as household goods. The first right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions. The second right will be of more significance for the average consumer debtor. Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the forms he signs. The creditor's experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.

In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditors in the debtor's hands as they provide a credible basis for the threat, because the replacement costs of the goods are generally high. The creditors rarely repossess, and debtors, ignorant of the creditors' true intentions, are coerced into payments they simply cannot afford to make.

The exemption provision allows the debtor, after bankruptcy has been filed, and creditor collection techniques have been stayed, to undo the consequences of a contract of adhesion, signed in ignorance, by permitting the invalidation of nonpurchase money security interests in household goods. Such security interests have too often been used by over-reaching creditors. This bill eliminates any unfair advantage the creditors have. *H.Rep.No.95–595*, 95th Cong., 1st Sess. 126–27 (1977)"

This statement of legislative intent not only distinguishes the *Radford* case, where the property subject to the mortgage was real estate, but also underscores the necessity of protecting the essential purpose of bankruptcy law, that is, to provide means

for the overburdened debtor to start again in life. Without providing a way to overcome state prohibitions against impairing contractual obligations through lien avoidance procedure, the *raison d'etre* of bankruptcy for the consumer debtor ceases to exist.

In balancing the interests of debtor-*in-bankruptcy* versus creditor, Congress has determined that protection of the debtor's most basic needs outweighs the creditor's contractual remedy for satisfaction of a consumer loan.

Therefore, in view of the purpose served by Section 522(f), it cannot be said that the law is so arbitrary and capricious as to amount to a denial of due process. The concept of due process is broad enough to accommodate the balancing of interests effected through Section 522(f) of the Bankruptcy Code.

In light of the foregoing analysis, the Court finds that Section 522(f) as applied does not violate the Fifth Amendment Due Process clause.

It is therefore ORDERED ADJUDGED AND DECREED that the lien of Firstmark Financial Corporation of Toledo on the household goods of the Debtors herein is AVOIDED to the extent that such lien impairs the exemptions to which the Debtors are lawfully entitled, and it is further

ORDERED that the Motion of Firstmark Financial Corporation to Dismiss the Debtors' Complaint To Avoid Lien is HEREBY OVERRULED.