**In re Ronnie Eugene PURDY and Sherry Lynn Purdy, Debtors.**

**Bankruptcy No. 80–00645R.**

United States Bankruptcy Court,
N. D. Georgia,
Rome Division.

May 12, 1981.

R. Everett Anderson, Rome, Ga., for debtors.

Clinton J. Morgan, Rome, Ga., for National City Bank of Rome.

### ORDER

HUGH ROBINSON, Bankruptcy Judge.

The objections of National City Bank of Rome to the confirmation of the debtors' Chapter 13 plan brought the matters involved herein before the Court. These objections were heard by the Court at the duly scheduled confirmation hearing held March 11, 1981 in Rome, Georgia. Having considered the objections, the arguments of the parties and the pleadings on file, the Court makes the following decision.

### FINDINGS OF FACT

Ronnie Eugene Purdy and Sherry Lynn Purdy filed a joint petition under Chapter 13 of Title 11 of the United states Code on December 5, 1980. The original plan provides for weekly payments of $14.00 to the trustee from which 100% of all secured claims will be paid over a period of four years. This plan was modified to increase the weekly payments to $15.00. Unsecured creditors will be paid nothing, and a number of executory contracts have been rejected.

On February 2, 1981 National City Bank of Rome, ("NCB"), a secured creditor, filed an "Objection to Confirmation". Several objections to confirmation have been asserted by NCB each of which will be addressed separately below.

## APPLICABLE LAW

In determining whether to confirm a Chapter 13 plan the Court is governed by 11 U.S.C. § 1325(a) which provides:

(a) The court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation; has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

■ NCB alleges that no plan was filed by the debtors as required by 11 U.S.C. § 1321 and Rule 13–201 of the Bankruptcy Rules. With this allegation the Court cannot agree. The debtors filed a printed form entitled "Chapter 13 Plan" with their petition. This plan discloses the duration of the

plan and the amount to be paid to the trustee each week. Secured creditors are listed, and the percentage of the secured claims to be paid under the plan is specified. The percentage of unsecured claims to be paid is also disclosed as well as the executory contracts which have been rejected. It cannot be seriously contended that this pleading is not a Chapter 13 Plan. Accordingly, the Court finds that a plan has been filed by the debtor as required by 11 U.S.C. § 1321 and Bankruptcy Rule 13–201.

■ NCB contends that creditors were given a notice requiring them to accept or reject a plan without ever being advised as to the nature of the plan in violation of Rules 13–202(a) and 13–204(a) of the Bankruptcy Rules. Rule 13–202 specifies the procedures by which a creditor may accept or reject a Chapter 13 plan.[1] Rule 13–204(a) sets forth the procedures for calling the first meeting of creditors, giving notice thereof and conducting the meeting. Paragraph (1) of Rule 13–204(a) is the applicable part of this rule with regard to NCB's objection for it requires that a copy or a summary of the last plan filed accompany the notice of the first meeting of creditors.

The creditors in this case were sent the form notice entitled "Order for Meeting of Creditors, Combined with Notice Thereof and of Automatic Stays". This notice discloses that the plan is a four year plan under which weekly payments of $14.00 will be paid to the trustee.[2] It is also disclosed that 0% of the unsecured claims will be paid. The notice further states the total amount of secured indebtedness, the total amount of unsecured indebtedness and the total overall indebtedness of the debtors.

The Court finds that most of the pertinent provisions of the plan were summarized in the notice for the first meeting of creditors. It might have been more helpful to the secured creditors if the notice had informed them of the debtors' proposal to

---

1. Under the Bankruptcy Code only a secured creditor may accept or reject a Chapter 13 plan. See 11 U.S.C. § 1325(a).

2. This notice was sent before the plan was modified to increase the weekly payments to $15.00.

pay secured claims in full, but the failure to do so was not prejudicial. The order and notice for the first meeting of creditors advised the creditors that their claims were being dealt with in a Chapter 13 plan. Being so advised, the creditors were put on notice to come into the Court to protect their interests. As the rights of the creditors were not prejudiced by the failure of the summary to describe every major provision in the plan, the Court concludes that NCB's argument is without merit.

NCB alleges that the proposed payments it will receive under the plan are not the equivalent of the allowed amount of NCB's secured claim for the reason that no interest is provided for. It is NCB's position that as a result of this failure to provide for interest, the debtors' plan does not comply with 11 U.S.C. § 1325(a)(5)(B)(ii).

Section 1325(a)(5)(B) becomes applicable when a plan provides for the payment of a secured claim and the holder of that claim has not accepted the plan. In this situation Section 1325(a)(5)(B) requires two things: (1) the plan must provide that the secured creditor will retain the lien securing his claim; and (2) the property to be distributed under the plan on account of the secured claim must be of a value as of the effective date of the plan that is not less than the allowed amount of the secured claim. It has been held that the compensation to which a secured creditor is entitled consists of the present value of the property to be distributed that takes into account the discount of money to be received in the future. *In Re: Ziegler*, 6 B.R. 3, 1 C.B.C.2d 874 (1980 Bkrtcy. B.C.S.D.Ohio); *In Re: Crockett*, 3 B.R. 365, 1 C.B.C.2d 926 (1980, Bkrtcy. B.C.N.D.Ill.); *In Re: Lum*, 1 B.R. 186, 1 C.B.C.2d 95 (1979, Bkrtcy. B.C.E.D.Tenn.). In each of these cases it was held that interest payments must be made to secured creditors when secured claims are provided for under a Chapter 13 plan pursuant to 11 U.S.C. § 1325(a)(5)(B). This Court has followed the holding of those cases. *In Re: McLeod*, 5 B.R. 520, 2 C.B.C.2d 319 (1980, Bkrtcy. B.C.N.D.Ga.); *In Re: Weaver*, 5 B.R. 522, 2 C.B.C.2d 315 (1980, Bkrtcy. B.C. N.D.Ga.). Because this Court interprets 11

U.S.C. § 1325(a)(5)(B) to require interest payments on allowed secured claims, it must be concluded that NCB's objection is without merit.

NCB contends that it is entitled to receive the full monthly payments called for by its contract with Sherry Purdy and to retain the lien on the collateral securing its claim. To determine the merits of this argument the Court must look to the provisions of 11 U.S.C. § 1325(a)(5)(B). The Court cannot dispute the assertion that NCB is entitled to retain its security interest. That is clearly provided for in Section 1325(a)(5)(B)(i). Accordingly the Court rules that NCB shall retain its lien in the collateral securing its claim. However, NCB is not entitled to receive the monthly payments in the amount provided for in its contract with Ms. Purdy. Under Section 1325(a)(5)(B)(ii) NCB is entitled to receive property having a value as of the effective date of the plan that is not less than the allowed amount of its secured claim. The requirements of Section 1325(a)(5)(B) have been fulfilled as NCB has retained its lien and the plan provides for full payment of NCB's claim.

NCB argues that it is entitled to be fully protected by insurance if it is forced into the proposed plan. At the confirmation hearing the Court ordered the debtors to provide insurance in the form of comprehensive and collision coverage on the vehicle which secures NCB's claim with NCB named as loss payee. Therefore NCB's insurance argument is moot.

NCB contends that its inclusion in the proposed plan of the debtors' is a denial of due process of law in violation of the Fifth Amendment to the United States Constitution. It cannot be disputed that the provisions of the Bankruptcy Code enacted by Congress ultimately impair the obligation of contracts, but this impairment alone does not constitute a denial of due process. The test of constitutionality in this instance is whether the provisions of the Bankruptcy Code are so grossly arbitrary and unreasonable as to be incompatible with fundamen-

tal law. *Campbell v. Alleghany Corporation*, 75 F.2d 947 (4th Cir. 1935) cert. denied. 296 U.S. 581, 56 S.Ct. 92, 80 L.Ed. 411 (1935); *Securities and Exchange Commission v. Albert & Maguire Securities Co., Inc.*, 378 F.Supp. 906 (E.D.Pa.1974). No attempt has been made by NCB to prove that any provision of Chapter 13 is so grossly arbitrary and unreasonable as to be constitutionally defective. In this situation the Court must reject the constitutional objection of NCB.

▮ It is alleged by NCB that no cause has been shown for approval of a plan in excess of three years as required by 11 U.S.C. § 1322(c). At the confirmation hearing the Court heard the testimony of the debtors with regard to the need for a four year plan. Mr. Purdy testified that a four year plan was formulated for the reason that the debtors could not afford payments of an amount sufficient to pay their secured creditors in full within a three year period of time. Mr. Purdy pays alimony to his ex-wife and child support for the maintenance and support of their two children. In addition to these dependents the debtors have a baby to support. Due to health problems suffered by the child the debtors incurred a considerable amount of medical expenses. Since the filing of their Chapter 13 petition, further medical expenses have been incurred as Mrs. Purdy was required to undergo surgery. The debtors' monthly income is approximately $995.75 and their monthly expenses are approximately $928.33. From the surplus income approximately $60.66 will be paid into the Chapter 13 plan each month.

After reviewing the debtors' bankruptcy schedules and considering the testimony presented at the confirmation hearing the Court concludes that a four year plan is acceptable. The debtors desire to pay their secured creditors in full. The Court is convinced that any increase in the amount of the weekly payments to be made into the plan would create an economic hardship for the Purdys'. Therefore if the debtors are to achieve their desired goal a four year plan is necessary. This Court is inclined to allow the debtors to extend their plan to four years in order to aid them in their efforts to fully repay their secured creditors.

▮ NCB argues that the debtors' plan has not been proposed in good faith as required by 11 U.S.C. § 1325(a)(3) for the reason that the income of the debtors' warrants payments into the plan greater than the amounts proposed. The Court is aware of the many cases which interpret good faith as requiring meaningful payments to creditors. However this Court has rejected the notion that there is any payment requirement embodied in the term "good faith". See *In Re: Walsey*, 7 B.R. 779 (1980, Bkrtcy. B.C.N.D.Ga.) and *In Re: Carter*, 9 B.R. 140 (1981, Bkrtcy. B.C.N.D.Ga.). The only sections of chapter 13 which quantify the payments to be made to creditors are 11 U.S.C. § 1325(a)(4) and (a)(5)(B)(ii). Section 1325(a)(4) provides that the property distributed to unsecured creditors under the plan must have a value as of the effective date of the plan that is not less than the amount that would be paid to those creditors in a Chapter 7 liquidation. When a secured claim is provided for in the plan and the plan has not been accepted by the holder of that claim Section 1325(a)(5)(B)(ii) requires that the property distributed to the secured creditor under the plan must have a value as of the effective date of the plan that is *not less than the allowed amount of* the secured claim. The debtors' plan meets these standards. As there are no other payment standards under Chapter 13 which the debtors are required to meet the Court concludes that NCB's objection is without merit.

▮ NCB contends that its inclusion in the debtor's plan violates the due process clause of the Fifth Amendment of the United States Constitution for the reason that the contract held by NCB pre-dates the effective date of Bankruptcy Reform Act of 1978. As the bankruptcy power vested in Congress is subject to the Fifth Amendment the taking of substantive rights in specific property acquired prior to the enactment of bankruptcy legislation is uncon-

stitutional. *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 547, 79 L.Ed. 1238 (1935). However, Congress is not constitutionally prohibited from impairing the obligation of contracts. *Id.*; In *Kuehner v. Irving Trust Company*, 299 U.S. 445, 452, 57 S.Ct. 298, 301, 81 L.Ed. 340 (1936) the Supreme Court said:

> "While, therefore, the Fifth Amendment forbids the destruction of a contract it does not prohibit bankruptcy legislation affecting the creditor's remedy for its enforcement against the debtor's assets, or the measure of the creditor's participation therein, if the statutory provisions are consonant with a fair, reasonable, and equitable distribution of those assets."

NCB's property interests have not been impaired by the debtors' Chapter 13 plan. The security interest held by NCB remains intact, and NCB has the right to receive the value of the allowed amount of its secured claim by virtue of 11 U.S.C. § 1325(a)(5)(B)(ii). What has been impaired is NCB's ability to enforce its contractual rights against the debtors at this time. However this impairment of a contractual obligation is not unconstitutional. *Kuehner v. Irving Trust Company, supra.* Accordingly the Court concludes that NCB has not been deprived of property without due process of law in violation of the Fifth Amendment.

Having carefully considered the plan proposed by the debtor, the Court finds that the provisions of 11 U.S.C. § 1325(a) have been complied with. Accordingly, the Court concludes that the debtor's plan shall be confirmed.

## CONCLUSIONS OF LAW

1. The debtor complied with the provisions of 11 U.S.C. § 1321 and Rule 13–201 of the Rules of Bankruptcy Procedure.

2. Although the summary of the debtors' plan contained in the order and notice for the first meeting of creditors could have been more informative, the failure to summarize all of the provisions of the plan was not prejudicial to the creditors.

3. In order to comply with 11 U.S.C. § 1325(a)(5)(B)(ii) a debtor must pay interest on allowed secured claims.

4. Although NCB is entitled to retain its security interest, it is not entitled to receive the monthly payments called for by its contract with the debtor.

5. NCB failed to prove that any provision of Chapter 13 of Title 11 of the United States Code is so grossly arbitrary and unreasonable as to be incompatible with fundamental law.

6. A four year plan is acceptable in this case.

7. The good faith standard of 11 U.S.C. § 1325(a)(3) does not set a standard for the amount of payments which must be made under a Chapter 13 plan.

8. NCB has not been deprived of property without due process of law in violation of the Fifth Amendment to the United States Constitution.

9. The debtors' plan complies with the provisions of 11 U.S.C. § 1325(a). It is therefore

ORDERED that the debtors' plan shall be and same is hereby confirmed; and it is further

ORDERED that the plan shall be administered in the following manner: The debtors shall make weekly payments to the trustee. From these payments the trustee shall first pay any unpaid claim of the kind specified in 11 U.S.C. § 507(a)(1) and the percentage fee for the standing trustee as required by 11 U.S.C. § 1326(a)(1) and (2). When these claims have been paid in full the trustee shall pay any other claims having priority under 11 U.S.C. § 507. After these priority claims have been paid in full the secured creditors shall be paid pro rata and shall receive interest on their claims at a rate of 10½% per annum. All of the aforementioned payments shall be made in accordance with the "Amortization Schedule" attached hereto as an appendix.