### In the Matter of EAGLE CLOTHES, INC., Debtor.

### Bankruptcy No. 77 B 2662.

United States Bankruptcy Court, S. D. New York.

March 11, 1982.

---

Ballon, Stoll & Itzler, New York City, for debtor.

Finley, Kumble, Wagner, Heine, Underberg & Casey, New York City, for Goldring-Pennsylvania, Inc.

Hahn & Hessen, New York City, for Charles Bornstein.

## MEMORANDUM & ORDER

JOHN J. GALGAY, Bankruptcy Judge.

Eagle Clothes, Inc. ("Eagle") filed a Petition for Arrangement on November 1, 1977, and has been managing its affairs as a Debtor-in-possession under Chapter XI of the Bankruptcy Act of 1898 ("Act"). The present controversy arises from Eagle's dispute of a claim filed pursuant to Bankruptcy Rule 301 by Goldring, Inc. ("Goldring"). Goldring's claim is based upon damages for breach of a lease agreement by Eagle as Lessor.

After a hearing on this matter on July 13, 1981 and consideration of all the papers submitted, this Court disallows Goldring's claim of $263,106. In so doing, this Court finds that the claim should reflect the amount allowed in the liquidated damage clause of the lease agreement, enhanced by any debt owed Goldring by Eagle prior to any breach of the lease agreement. The liquidated damages are estimated to be $5,285, and the Debtor admits an additional balance due Goldring of $1,199. Therefore, this Court will allow a claim of $6,484 by Goldring against Eagle.

A brief synopsis of the facts is necessary as background to the Court's decision. Eagle closed its Wyoming Valley Mall Store in April 1979 and subsequently liquidated its interest in this property. Goldring had rented space under a lease for a women's fashion store in the Wyoming Valley Mall as well as securing management and commercial services from Eagle under that same lease agreement. That lease was entered in May 1972 and was to terminate on July 31, 1983. When Eagle closed its store at the Mall in April 1979, Goldring was effectively deprived of its rights and interests under the lease.

There is no dispute by the parties that a contract has been breached. Rather, there

is a vast discrepancy in the amount each party cites as damages for breach of the lease. Goldring claims $263,000 in damages based on loss of profits for the duration of unexpired leasehold. Eagle admits a debt to Goldring of $1,199 which reflects the difference between a rent liability owed Goldring and a Goldring receivable due Eagle.

▮ Goldring's claim is not scrutinized under § 63(a)(9) of the Act, because it is not a claim arising as a result of rejection by the Debtor. Therefore, the Creditor's claim is not limited by the statutory provision that the claim for damages not exceed the amount of one year's rental calculated from the date of reentry. 3A *Collier on Bankruptcy* ¶ 63.31 (14th ed. 1975). However the creditor's claim for damages is limited by the lease agreement itself. A "primary source" for measuring damages is the covenant of the parties, "if damages or indemnity are not based on rejection." *In re Plywood Company of Pennsylvania*, 425 F.2d 151, 156 (3d Cir. 1970). A liquidated damage clause [1] in a lease fixes the amount of the damages. *Id.* at 154; *see In re Crawford Clothes, Inc.*, 434 F.2d 399 (2d Cir. 1970); *In re Credit Corporation*, 366 F.2d 402 (2d Cir. 1966). The lease in question provides remedy for its breach. The lease states:

> In the event this agreement is terminated as a result of the bankruptcy of the lessor, lessor shall pay to lessee an amount equal to the unamortized value of lessee's trade fixtures and furnishings in the store premises, computed on a ten year straight line basis.

Goldring's damages under this formula are $5,285. *See* Claimant's (Goldring's) Supplemental Post-Trial Memorandum.

The lease further states:

It is specifically understood and agreed between the parties that if lessor, in its sole discretion, shall determine to surrender possession of any of the demised premises or its current lease... lessee shall be bound by lessor's action and insofar as the term of the lease.... Lessee shall have no rights of redress of any kind or nature with respect to such action by the lessor.

Eagle and Goldring are corporate entities who were represented by counsel and fully capable of entering into contract as a result of arms length negotiation. They are bound by their agreement.[2]

▮ This Court briefly considers the other allegations of the parties: Debtor's failure to plead affirmative defense and the claimant's failure to adequately prove damages under the liquidated damage clause of the lease. An affirmative defense is "the pleading of a matter that is not within the claimant's prima facie case." 2A *Moore's Fed. Pract.* ¶ 1842 (2d ed. 1975). The Debtor does not deny breach of contract or the fact that any monetary amount is due the debtor. The amount of damages are in issue. "The Federal rules are designed to avoid basing decisions on the merits of pleading technicalities." *In re Credit Industrial Corporation*, 366 F.2d 402, 411 (2d Cir. 1966) commenting on F.R.Civ.P. 8. The hearing transcript and post-trial memoranda fully depict the issues involving the lease agreement between the parties. Finally, damages are computed from the lease agreement itself, claimant's accounting statements showing fixture cost and claimant's estimate in its Supplemental Post-Trial Memoranda.

Goldring's claim of $263,106 is hereby disallowed and its claim instead fixed at $6,484.

It is so ordered.

---

1. "Liquidated damages is the sum which a party to a contract agrees to pay if he breaks some promise and which having been arrived at by good faith to estimate actual damages that will probably ensue from breach, is recoverable as agreed damages if breach occurs." *In re Plywood Company of Pennsylvania*, 425 F.2d 151, 154 (3d Cir. 1970).

2. Even though actual damages might exceed the agreed sum, the aggreived party can recover no more. C. McCormick, *Damages* § 613 (1935). *In re Plywood Company of Pennsylvania*, 425 F.2d 151, 154 (3d Cir. 1970).