**In re CITY STORES COMPANY, d/b/a Maison Blanche, Loveman's, Richards, Hearns, R. H. White, Franklin Simon, B. Lowenstein & Bros., Incorporated, W. & J. Sloane, Inc., the Mayer Furniture Co., d/b/a W. & J. Sloane, Debtors.**

Bankruptcy Nos. 79 B 1320–79 B 1323 (EJR).

United States Bankruptcy Court, S. D. New York.

Sept. 22, 1982.

---

Levin & Weintraub, New York City, for debtors.

Booth, Lipton & Lipton, New York City, for Penn Mut. Life Ins. Co.

## DECISION ON LANDLORD'S MEASURE OF DAMAGES

EDWARD J. RYAN, Bankruptcy Judge.

On July 29, 1980, a voluntary petition under Chapter XI of the Bankruptcy Act was filed by City Stores Company (the "debtor" or "tenant"). The debtor, doing business as Loveman's, had entered into a lease (the "Lease") with Si-Mac Realty Associates and had remained in the premises through July 1, 1980 when it rejected and disaffirmed the Lease.[1] The dissaffirmance of the Lease was approved by order of this court dated September 5, 1980 pursuant to Section 313 of the Bankruptcy Act.

The Penn Mutual Life Insurance Company (successor in interest to Si-Mac Realty Associates and hereinafter referred to as the "creditor" or "landlord") filed its claim dated September 26, 1980, evidencing its general unsecured claim against the debtor for damages for breach of the Lease. The damages sought were based on a survival of damages covenant contained in such Lease.[2] Thereafter City Stores filed an objection to the claim dated October 15, 1981, seeking to reduce the amount of the landlord's claim by utilizing a liquidated damages formula.[3]

---

1. The rejection constituted a breach as of the date of the filing of the original petition under Chapter XI in a Rule 11–6 case. 9 Collier on Bankruptcy ¶ 7.15(3), page 74.

2. Survival of damages covenants generally provide that the tenant will remain liable for rent for the balance of the term, minus any rent that the landlord receives from a new tenant.

3. A liquidated damages formula calculates the difference between the present value (as of the date of the surrender of the premises) of the rent reserved under the lease and the fair mar-

Penn Mutual made efforts to relet the premises upon receiving notification of the termination of the Lease. Despite these efforts, the landlord was unable to secure a new tenant until June 10, 1981 (13 months after the rejection of the Lease) when New Ideal Stores, Inc. signed a new lease for a three-year term commencing on July 31, 1981 and terminating on July 30, 1984. In connection with obtaining this new lease,[4] the landlord incurred and paid expenses for real estate commissions and repairs to the premises.

The issue to be decided is whether the appropriate measure of the landlord's provable damages for City Stores' rejection of the Lease is (a) the measure of damages set forth in the Lease, Paragraph 20[5], (b) the actual, non-contingent, liquidated damages suffered to date by reason of the rejection of the Lease[6], or (c) the liquidated damages formula proposed by City Stores.

■ Under Section 353 of the Bankruptcy Act, a landlord can prove his claim for "injury resulting from the rejection of an unexpired lease of real estate or for damages or indemnity under a covenant contained in such lease," but is limited to recovery of, "an amount not to exceed the rent, without acceleration, reserved by such lease for the three years next succeeding the date of the surrender of the premises to the landlord . . . plus unpaid accrued rent, without acceleration, up to the date of surrender." Although Section 353 serves as a limitation of damages for landlord's claims based on rejected unexpired leases, it does not provide any standard method by which damages are to be calculated. Therefore, the parties are free to create their own formula for damages in a covenant in the lease.[7] Failure to insert such a damages formula will result in the automatic implementation of the liquidated damages formula.[8] In the instant case, a specific survival covenant in Section 20(a) of the Lease[9] is made applicable to bankruptcy proceedings because Section 20(b) of such Lease[10] specifically refers to the remedies of Section 20(a).

■ In re W. T. Grant, 13 B.R. 198 (Bkrtcy.1981) involved a rejected lease with separate bankruptcy and remedy provisions. The court held that the landlord could have recovered for monthly deficiencies as they accrued under the covenant if the bankruptcy provision of the lease had mentioned the remedy provisions' survival of damages clause. Since the bankruptcy provision in the Grant lease did not refer to the survival of damages clause, a liquidated damages formula was employed. However, in the case at hand, the bankruptcy provision in Section 20(b) of the Lease specifically refers to the survival of damages covenant of the

ket value of the leased premises for the remainder of the term.

The rent reserved and the fair rental value are presumed to be the same unless proven otherwise by the landlord. *C. D. Stimson v. Porter,* 195 F.2d 410 (10th Cir. 1952).

4. The new lease provides for more rent to be received by the landlord than the rent provided for in the rejected Lease.

5. The Lease in paragraph 20, provides that the tenant will remain liable for the amount due under the Lease as rent for the remainder of the term at the times stipulated for payment of such rent, less any amount received by the landlord from new tenants. Paragraph 20 is a survival damages covenant.

6. The creditor contends that measures (a) and (b) above yield the same result.

7. *Oldden v. Tonto Realty Corp.,* 143 F.2d 916 (2d Cir. 1944); *C. D. Stimson v. Porter,* 195 F.2d 410 (10th Cir. 1952). Although *Oldden* and *Stimson* are cases dealing with Section 63 of the Act, they are comparable to cases under Section 353 due to the similar construction of both sections. 9 Collier on Bankruptcy ¶ 7.15(2), p. 72.

8. *City Bank Farmers Trust Co. v. Irving Trust Co.,* 299 U.S. 433, 57 S.Ct. 292, 81 L.Ed. 324 (1936); *In re Fernandes Supermarkets,* 1 B.R. 249 (Bkrtcy.1979).

9. See Note 4, supra, for summary of Lease provision for landlord's remedy.

10. Section 20(b) of the Lease provides that if the tenant is adjudicated bankrupt, the Lease can be terminated, "as in the case of a violation by Tenant of any of the terms, covenants or conditions of this Lease as hereinbefore [Section 20(b) ] in the Lease provided."

remedies provision in Section 20(a) of such Lease.

In support of its argument, the debtor cites *Kuehner v. Irving Trust Co.,* 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340 (1937) where there was an indemnity clause in the lease but the court still used the liquidated damages formula. However, *Kuehner* can be distinguished from the present case on the basis that the damages sought were future damages and difficult to prove, while in the instant case the damages have already been incurred.[11] Furthermore, in *Kuehner,* the creditor chose to seek damages under a liquidated damages formula despite the indemnity clause and proved the formula's viability in that case. In the case at hand, Penn Mutual rightfully opted, under Section 353 of the Bankruptcy Act, to prove damages under the covenant. The landlord's option to prove damages under either method was approved by the court in *In re Overmyer,* 10 C.B.C. 17 (S.D.N.Y., Roy Babitt, B.J. 1976) on the grounds that Section 353 of the Act allows recovery by "the landlord for injury resulting from the rejection of an unexpired lease of real estate or for *damages* or *indemnity under a covenant* (emphasis added)."

In addition to the damages computed by the survival clause of the Lease, the landlord is entitled to claim a reasonable amount for reletting commissions and repairs that are not substantial in nature. *In re Parkview-Gems, Inc.,* 465 F.Supp. 629 (W.D.Mo.1979).

In conclusion, the landlord can claim as damages the leasehold rent for 36 months, less the amount received from New Ideal Stores during that period.[12] In addition, the creditor can claim his expenses incurred for reletting commissions and actual and necessary repairs.

Settle an appropriate order.

11. Penn Mutual seeks recovery of the 13 months lost rent when the premises were vacant, and expenses for repairs and commissions for reletting.

12. As per the survival of damages covenant in the Lease.