In Re D.H. OVERMYER COMPANY, INC. (OHIO), et al., Debtors,

v.

IRVING TRUST COMPANY, Plaintiff-Appellant.

No. 83 Civ. 5692 (SWK).

United States District Court, S.D. New York.

March 17, 1986.

Carb, Luria, Glassner, Cook & Kufeld by Bernard Sumliner, New York City, for plaintiff-appellant.

Patterson, Belknap, Webb & Tyler by Harold Tyler, Jr., New York City, for defendants-appellees.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

### FACTUAL BACKGROUND

Irving Trust Company ("Irving") leased four floors in a commercial building located in Manhattan from Seymour B. Durst, Roy H. Durst, David M. Durst and Alma D. Askin for a 21-year term, ending in 1986. Pursuant to a sublease dated September 1, 1965, D.H. Overmyer Company, Inc. ("Overmyer"), rented two of these floors from Irving for approximately fifteen years—from 1965 to 1980.

On November 16, 1973, Overmyer filed a bankruptcy petition under Chapter XI; on or about December 26, 1973, the bankruptcy court granted Overmyer's application to reject and disaffirm its unexpired sublease with Irving. Irving then attempted to rerent the space vacated by Overmyer for $8.50 per square foot, which exceeded the $5.50 per square foot price which Overmyer had paid. Irving was unable to rerent the entire space and recouped only a portion of its damages. Irving subsequently filed a proof of claim for $650,272.99 (later amended to $476,043.93 at trial) for losses arising from Overmyer's rejection of the lease.

Overmyer objected to Irving's claim by Notice and Application dated November 24, 1976. On March 3, 1978, a trial of the objections was held before Bankruptcy Judge Roy Babitt. While this matter was *sub judice*, Bankruptcy Judge Joel Lewittes replaced Judge Babitt before the lat-

ter had issued a decision. The parties agreed to allow Judge Lewittes to rule upon Irving's claim without a further evidentiary hearing.

In his January 14, 1983 decision, Judge Lewittes ruled that Irving had not sustained actual damages as a result of Overmyer's rejection of the unexpired lease agreement. The Court found that Irving failed to overcome the governing presumption that a landlord can rerent a premises at the same rate as is reserved under the lease. Thus, the Court ruled that the "survival clause"[1] contained in the sublease (which provided Irving with liquidated damages in the event that Overmyer breached the lease) should not be triggered to grant Irving its requested relief.

The bankruptcy court stated that the federal courts "uniformly follow" a rule for calculating damages in these situations. January 14, 1983 decision, at 12. This rule, established by the Supreme Court in *City Bank Farmers Trust Co. v. Irving Trust Co.*, 299 U.S. 433, 57 S.Ct. 292, 81 L.Ed. 324 (1937), provides that damages for the breach of an unexpired lease in the bankruptcy context consist of "the difference between the present value of the rent reserved under the lease and the present fair rental value of the property for the remainder of the term, presumptively equal amounts." January 14, 1983 decision, at 13.[2] The bankruptcy court stated that when applying this rule, a rebuttable presumption exists that the lessor can rerent the leased premises without incurring loss. *Id.* This presumption is rebutted if the landlord can show that despite "reasonable efforts," he was unable to rerent at the lease amount. *Id.* at 27.

In reaching his decision, Judge Lewittes did not apply the damages formula established in *Irving Trust Co.*, but initially looked to the survival clause created by the parties.[3] However, before applying the survival clause the Court adopted the presumption that a landlord can rerent at the lease amount and inquired as to whether Irving made reasonable efforts to rerent the premises. The Court added:

> this Lease. The failure or refusal of Landlord to re-let the premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Landlord may incur in connection with re-letting, such as legal expenses, attorneys' fees, brokerage and for keeping the Demised Premises in good order or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this Lease and any suit brought to collect the amount of the deficiency for any month shall not prejudice in any way the rights of Landlord to collect the deficiency for any subsequent month by a similar proceeding ...

---

1. The "survival clause" contained in Article 17 of the sublease provides in part:

   17. REMEDIES OF LANDLORD—WAIVER OF REDEMPTION.

   In case of any default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration, together with such expenses as Landlord may incur for legal expenses, attorneys' fees, brokerage, and/or putting the Demised Premises in good order, or for preparing the same for re-rental; (b) Landlord may re-let the premises or any part or parts thereof, either in the name of Landlord or otherwise, for a term or terms which may at Landlord's option be less than or exceed the period which would otherwise have constituted the balance of the term of this Lease and may grant concessions or free rent; and/or (c) Tenant or the legal representatives of Tenant shall also pay Landlord as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the lease or leases of the Demised Premises for each month of the period which would otherwise have constituted the balance of the term of

2. The Supreme Court stated: "The amount of the landlord's claim for the loss of his lease necessarily is the difference between the rental value of the remainder of the term and the rent reserved, both discounted to present worth." *City Bank Co.*, 299 U.S. at 443, 57 S.Ct. at 297.

3. *See* January 14, 1983 decision at 27–28 ("To be sure, we deal here with the measure of rejection damages represented by the survival clause found in the Irving Sublease and not the measure as is found in *City Bank Farmer's Trust Co.* ..").

While a state court would not require a landlord to make reasonable efforts to mitigate damages due under a survival clause, this Court must. And the reasonable efforts this Court requires should not differ depending upon whether a lease includes a survival clause or whether judicially determined measurements of rejection damages apply instead.

*Id.* at 27. Thus, the Court determined that the reasonableness inquiry was necessary regardless of whether the Court applied the damages formula used by the federal courts or the survival clause appearing in the lease.

After analyzing Irving's efforts to rerent the premises, the Court concluded that Irving failed to rebut the presumption that a landlord can rerent an unexpired lease term at the lease amount. *Id.* The Court reached this determination because Irving sought to rerent the space vacated by Overmyer at its fair market value, which exceeded the amount provided in the lease.

In reaching this decision, the Court rejected the New York rule that a landlord need not use reasonable efforts to rerent a premises once the lease has been terminated, since it would lead to an unreasonable result. *Id.* at 16. The Court explained that this rule gave Irving the potential of a double recovery: Irving could collect three years rent from the debtor in a bankruptcy proceeding and rerent the premises to a third party. *Id.* The Court determined that this rule conflicted with bankruptcy policy and thus should not be followed. *Id.* The Court concluded that Irving failed to sustain actual damages and thus, was not entitled to the damages provided for in the survival clause.

After issuing this decision, Judge Lewittes resigned. Pursuant to this decision, Bankruptcy Judge John J. Galgay expunged Irving's claim in an order dated June 8, 1983. In the instant motion, Irving appeals this order.

---

4. Irving also argues that even if New York law required Irving to mitigate damages, Irving satisfied this requirement. In light of this Court's disposition, this issue need not be addressed.

## ISSUES PRESENTED

Irving argues that the bankruptcy court erred in failing to award damages as provided for in the survival clause of the sublease. Secondly, Irving maintains that the bankruptcy court should have applied New York law, which does not require a landlord to mitigate damages in a commercial setting.[4]

Overmyer contends, *inter alia,* that Irving simply failed to prove that it sustained actual damages as a consequence of Overmyer's rejection of the sublease and that the Court properly applied the federally created law of rejection damages.

## THE LAW

Section 353 of the Bankruptcy Act, 11 U.S.C. § 753 (repealed),[5] provides a limitation of damages for landlords' claims based on rejected unexpired leases. Under this provision, a landlord can prove his claim for losses resulting from the rejection of an unexpired lease of real estate but may only recover

> an amount not to exceed the rent, without acceleration, reserved by such lease for the three years next succeeding the date of the surrender of the premises to the landlord ... plus unpaid accrued rent, without acceleration, up to the date of surrender.

■ Although Section 353 provides a limitation on the amount of damages a landlord can recover, it fails to include a method of calculating these damages. Therefore, parties are free to create their own formulas for calculating damages in the lease provisions. *In Re City Stores Co.,* 23 B.R. 201, 203 (Bkrtcy.S.D.N.Y.1982) (citations omitted). If parties fail to insert a damages provision in their lease agreement, or if such provision is unenforceable, the federal courts, as noted by the bankruptcy court, apply an established formula

---

5. This case is governed by the Bankruptcy Act of 1938, 11 U.S.C. § 1 *et seq. See Matter of Halux, Inc.,* 665 F.2d 213 (8th Cir.1981).

for calculating damages. *See id.* Under this formula, the landlord's damages are "the difference between the present lease value for the remainder of the term and the present fair rental value for the remainder of the term." *In Re Fernandez Supermarkets, Inc.,* 1 B.R. 249, 251 (Bkrtcy.D. Mass.1979) (citations omitted). *See also In Re W.T. Grant Co.,* 36 B.R. 939, 941 (Bkrtcy.S.D.N.Y.1984) ("absent a specific damage provision in a lease, courts apply the rule enunciated by the Supreme Court in *City Bank Farmers Trust Co.* . . . that the measure of damages which the landlord may recover as a result of the tenant's breach is 'the difference between the rental value of the remainder of the term and the rent reserved, both discounted to present worth.' ") (citations omitted).

■ In applying this formula, a landlord may recover only "actual damages" suffered as a result of the tenant's breach. *Id. See also In the Matter of D.H. Overmyer Co., Inc.,* 10 Collier Bankr.Cas 17, 20–22 (Bankr.S.D.N.Y.1976) (Proof of actual damages is a prerequisite to recovery). A key presumption applies to this method of analysis: that in the event of a breach, the lessor can re-rent the leased premises for the amount of the reserved rent without loss or damage. *Matter of W.T. Grant Co.,* 13 B.R. 198, 202 (Bkrtcy.S.D.N.Y. 1981), *aff'd,* 36 B.R. 939 (Bkrtcy.S.D.N.Y. 1984). The landlord may overcome this presumption by showing that he is unable to re-rent the premises under equally advantageous terms. *Id.*

## DISCUSSION

■ This Court agrees with the result reached by the bankruptcy judge, but for a different reason. This Court finds that the survival clause located in Article 17 of the sublease does not apply in the bankruptcy context. *See W.T. Grant,* 36 B.R. 939, 941 (Bkrtcy.S.D.N.Y.1984). Instead, either the federally created rule or Article 15 of the sublease (which provides for damages in the bankruptcy context)[6] govern this ac-

6. This provision provided: 15. BANKRUPTCY (a) If at any time prior to the date herein fixed as the commencement of the term of this Lease there shall be filed by or against Tenant in any court pursuant to any statute either of the United States or of any State a petition in bankruptcy or insolvency or for reorganization or for the appointment of a receiver or trustee of all or a portion of Tenant's property, and within ninety (90) days thereof Tenant fails to secure a discharge thereof, or if Tenant makes an assignment for the benefit of creditors, or petitions for or enters into an arrangement, this Lease shall *ipso facto* be cancelled and terminated and in which event neither Tenant nor any person claiming through or under Tenant or by virtue of any statute or of an order of any court shall be entitled to possession of the Dsmised Premises and Landlord, in addition to the other rights and remedies given by (c) hereof and by virtue of any other provision herein or elsewhere in this Lease contained or by virtue of any statute or rule of law, may retain as liquidated damages any rent, security, deposit or monies received by it from Tenant or others in behalf of Tenant upon the execution hereof.

(b) If at the date fixed as the commencement of the term of this Lease or if at any time during the term hereby demised there shall be filed by or against Tenant in any court pursuant to any statute either of the United States or of any State a petition in bankruptcy or insolvency or for reorganization or for the appointment of a receiver or trustee of all or a portion of Tenant's property, and within ninety (90) days thereof Tenant fails to secure a discharge thereof, or if Tenant makes an assignment for the benefit of creditors or petitions for or enters into an arrangement this Lease, at the option of Landlord, exercised within a reasonable time after notice of the happening of any one or more of such events, may be cancelled and terminated and in which event neither Tenant nor any person claiming through or under Tenant by virtue of any statute or of an order of any court shall be entitled to possession or to remain in possession of the Demised Premises but shall forthwith quit and surrender the Demised Premises, and Landlord in addition to the other rights and remedies Landlord has by virtue of any other provision herein or elsewhere in this Lease contained or by virtue of any statute or rule of law, may retain as liquidated damages any rent, security, deposit or monies received by him from Tenant or others in behalf of Tenant.

(c) It is stipulated and agreed that in the event of the termination of this Lease pursuant to (a) or (b) hereof, Landlord shall forthwith, notwithstanding any other provisions of this Lease to the contrary, be entitled to recover from Tenant as and for liquidated damages an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the then fair and reasonable rental value of the Demised Premises for the same period. In the computation of such damages the difference between any installment of rent

tion. Since both formulas are identical and both indicate that Irving has failed to sustain actual damages, the determination by the bankruptcy court is AFFIRMED.

In *W.T. Grant*, the district court upheld the bankruptcy court's finding that the survival clause in a lease agreement was inapplicable in the bankruptcy setting. The survival clause, which was similar to the survival clause in the instant action, provided that in the event of a default by the tenant and either termination of the lease or reentry by the landlord, the tenant remained responsible for the monthly payment of rental deficiencies. *Id.* at 942 n. 9. When the tenant entered into bankruptcy proceedings, the landlord filed a proof of claim against the estate.

When the landlord sought to invoke the survival clause, the bankruptcy court indicated that it did not apply in the bankruptcy context. *Id.* at 941. It also ruled that, in the absence of a provision in the lease governing damages recoverable in the bankruptcy context, the landlord could not recover since it had suffered no actual damage as a result of the tenant's breach.

In affirming the bankruptcy court, the district court agreed that the survival clause, paragraph 17(a), was inapplicable:

> While some courts have applied a provision such as paragraph 17a in a bankruptcy context where that provision was either made expressly applicable in the event of the tenant's bankruptcy or the lease contained a separate bankruptcy provision which incorporated such a damage provision contained elsewhere in the lease ... neither circumstance exists in this case. Paragraph 17a does not refer to bankruptcy at all, and paragraph 17b

—which expressly applies in the event that the tenant becomes bankrupt or insolvent—neither contains its own damages covenant nor incorporates the one contained in paragraph 17a.

*Id.* at 942 (citations omitted). The Court concluded that since no specific damage provision in the lease controlled, the federally created rule should apply. *Id.* at 941.

In the instant action, Article 17, the survival clause, was not "made expressly applicable" to the bankruptcy context. Moreover, Article 15 of the sublease contained a separate damages provision which specifically applied in the bankruptcy context. Article 15 was triggered if Overmyer failed to secure a discharge within ninety days of filing the bankruptcy petition. *See* paragraph 15(b) of sublease. If Article 15 applied, the landlord could recover from the tenant "an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the then fair and reasonable rental value of the Demised Premises for the same period." *See* paragraph 15(c) of sublease.

■ Since the damages provision in Article 15 of the sublease is similar to the one established by the Supreme Court in *City Bank Farmers Trust Co.*, this Court need not determine which formula applies. Under either standard, it is evident that the bankruptcy court correctly determined that Irving did not suffer damages. The rental value of the premises remaining under the lease exceeded the rental value of the lease agreement. In such instances, the landlord has not sustained actual damages. As stated in *Third National Bank v. Winner Corporation*, 29 B.R. 383, 388 n. 3 (Bkrtcy

becoming due hereunder after the date of termination and the fair and reasonable rental value of the Demised Premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four percent (4%) per annum. If such premises or any part thereof be re-let by Landlord for the unexpired term of said Lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such re-letting shall be prima facie evidence of the

fair and reasonable rental value for the part or the whole of the premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of Landlord to prove for and obtain as liquidated damages by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

M.D.Tenn.1982), where the present value of the term remaining under the lease is *greater* than the value reserved under the lease, the amount owed to the lessor is a negative amount. "No matter how great that negative sum, the Bankruptcy Court would find only zero damages." *Id.*

Accordingly, this Court agrees with the bankruptcy court that Irving sustained no actual damages. The bankruptcy court's decision is AFFIRMED.[7]

SO ORDERED.

7. Irving's claim that the bankruptcy court should have applied New York law on the subject of mitigating damages is rejected. State laws that conflict "with the system provided by the Bankruptcy Act" are suspended. *Butner v. United States,* 440 U.S. 48, 54 n. 9, 99 S.Ct. 914, 918 n. 9, 59 L.Ed.2d 136 (1979). *Cf. Pepper v. Litton,* 308 U.S. 295, 308, 60 S.Ct. 238, 246, 84 L.Ed. 281 (1939) (the Bankruptcy Court must "sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate.").