In re J. BILDNER & SONS, INC., Windward Management Company, Inc., Windward Group Companies, Inc., Windward Management Company of New York, Inc., Windward Management Company of Illinois, Inc., Windward Management Company of Georgia, Inc., and Windward Management Company of Virginia, Inc., Debtors.

Bankruptcy Nos. 88–11257–JNG to 88–11264–JNG.

United States Bankruptcy Court, D. Massachusetts, at Boston.

Oct. 6, 1989.

Richard P. Olson, Ropes & Gray, Boston, Mass., for debtors.

Preben Jensen, Lane & Mittendorf, New York City, for creditor.

## MEMORANDUM

JAMES N. GABRIEL, Chief Judge.

## I. INTRODUCTION

The matter before the Court is the objection filed by the above-captioned Debtors to the proof of claim filed by Young & Rubicam Inc. ("Y & R"). The claim of Y & R arises from the termination of a sublease of approximately 4000 square feet of retail space located at 230 Park Avenue South, New York, New York, which sublease was entered into between Windward Management Company of New York, Inc. ("Windward"), as sublessee, and Y & R, as sublessor. The Debtors intended to construct and operate a J. Bildner & Sons grocery store in the leased space, but the store never opened due to the Debtors' financial difficulties.

Y & R filed its proof of claim on or about October 24, 1988. Through its proof of claim, Y & R seeks allowance of an unsecured claim in the aggregate amount of $970,638.46. Y & R breaks down the claim as follows: 1) $484,292.11 for failure to discharge liens on the premises filed by suppliers of labor and materials; 2) $35,-438.35 for additional rent for the Debtors' portional share of the amount by which the taxes for the period prior to the repossession of the premises by Y & R exceeded the base year tax; 3) $433,823 for liquidated damages for default termination pursuant to Article XXI of the sublease; and 4) $17,085 for costs and expenses, including reasonable attorneys' fees.

The Debtors objected to Y & R's proof of claim on May 5, 1989. In their memorandum, which was filed on September 25, 1989, the Debtors specifically objected to the $484,292.11 and $433,823 amounts. They did not object to either the $35,483.35 amount or the $17,085 amount, although with respect to the latter amount they requested that Y & R's counsel be ordered to file a fee application.

Despite the fact that notice of the objection called for a response to be filed by Y & R on or before June 14, 1989, Y & R failed to file a response by that date. Indeed, Y & R did not file any pleadings to clarify its position with respect to the Debtors' objection until it submitted a memorandum on September 26, 1989 during the evidentiary hearing on the Debtors' objection. In its memorandum, Y & R amended its proof of claim. The Court disallowed Y & R's proposed amendment as being untimely and potentially prejudicial to unsecured creditors since counsel to the creditors' committee was unaware of the amendment.[1] The Court, however, notes that counsel to the Debtor was given notice of the amendment in answers to the interrogatories that were not brought to the Court's attention prior to the hearing.[2]

---

1. In *In re Pyramid Building Co.*, 87 B.R. 38 (Bankr.N.D.Ohio 1988), the court stated "[b]alancing the equities is a necessary determinant of the propriety of amendment." *Id.* at 40. *See also In re Gibraltor Amusements, Ltd.*, 315 F.2d 210 (2d Cir.1963). Although the Court notes that the Debtors' consolidated plan has been confirmed, financing exigencies required that the allowed amounts of landlord claims be capped at an amount set forth in the plan by October 2, 1989.

2. The Court also notes that Y & R unofficially sought a continuance of the evidentiary hearing on September 25, 1989 (a fax copy only of an application for a continuance was submitted to the Court). Additionally, at the time of trial, Y & R indicated that an ostensibly key witness was unable to appear. Given the amount of time since the filing of the Debtors' objection, the Court was neither moved by the reasons advanced by Y & R to allow a continuance of the hearing at the last minute nor favorably impressed by Y & R's apparent lack of preparedness.

## II. FACTS

One witness, Mr. Carl Sturges, Y & R's Director of Real Estate, testified during the course of the evidentiary hearing, and five exhibits were introduced into evidence. The facts are largely undisputed.[3]

Windward entered into a sublease with Y & R on July 15, 1986.[4] The sublease was for a term of approximately 14 and one-half years, ending on January 31, 2001. The base rent reserved under the sublease was $136,748 for the first two years. The base rent increased in subsequent years in accordance with a schedule contained in Article III of the sublease. Windward defaulted on certain of its obligations under the sublease. It failed to make several monthly payments, and it commenced substantial construction and alteration work, including the demolition of a sprinkler system, on the leased premises without obtaining Y & R's consent and without furnishing performance, labor and material bonds. Mr. Sturges testified that Windward's failure to obtain the requisite bonds constituted a serious default under the sublease and prompted Y & R to terminate the sublease. In accordance with the terms of the sublease, Y & R sent Windward a notice of termination dated December 16, 1987. Subsequently, Y & R instituted civil proceedings against Windward and obtained a warrant of eviction from the Civil Court of the City of New York. Y & R repossessed the premises on February 15, 1988. Y & R also sued the Debtors in the Supreme Court of the State of New York for *inter alia* damages pursuant to Article XXI of the sublease due to breach of the lease. The parties stipulated that Y & R expended $17,085 in legal fees with respect to the eviction proceeding and the suit for damages.

The parties also stipulated that lien notices in the amount of $484,292.11, covering indebtedness for labor and materials furnished to the Debtors have been filed in the Office of the Clerk of the County of New York. Additionally, the parties stipulated that Y & R paid bonding fees in the amount of $9,203.

The testimony and exhibits revealed that Y & R, as well as J. Bildner & Sons, Inc., Windward Management Company, Windward and others were sued by Ed Herschenfeld Construction Co, Inc. ("Herschenfeld") with respect to the labor and materials furnished by Herschenfeld to the Debtors. Herschenfeld alleged:

> The work, labor and services so performed by the plaintiff and the materials so furnished by plaintiff were performed and furnished for the benefit of defendant, Young & Rubicam and with the consent of defendant, Young & Rubicam in that performance of the Work was contemplated by Young & Rubicam upon its entering into its lease with Windward of New York, performance of the Work was desired by Young & Rubicam for the improvement and upgrading of the Premises and the Property, plaintiff's performance of the Work was inspected and supervised by Young & Rubicam, Young & Rubicam itself engaged plaintiff to perform work on and for the improvement of the Property simultaneously with and related to the Work upon the Premises, and Young & Rubicam came into possession of the improvements effected by the Work upon a termination of its sublease of the Premises to Windward of New York.

Y & R denied this allegation and affirmatively asserted the defense that the services performed were done without its consent. The parties stipulated that Y & R has expended $7,254 in the defense of this action to date. Y & R has made no payment to Herschenfeld or any other lien claimants. No offer of proof was made and no evidence was submitted relative to sums expended by Y & R to either clean up the premises or repair any damage done to the premises during the course of construc-

---

3. To the extent the record of September 26, 1989 is silent as to certain facts, the Court has utilized information set forth in the memoranda, but only to the extent both parties recite the same information.

4. The sublease was amended twice. Neither amendment is disputed by the parties.

tion. The Court notes that Y & R in its amended proof of claim, claims approximately $33,500 for such costs.

Mr. Sturges testified extensively about Y & R attempts to relet the premises. He indicated that Y & R utilized the services of real estate brokers. The first broker, Brad Mendelson of Edward S. Gordon Company Inc. submitted two offers to Y & R, neither of which culminated in the execution of a sublease. The first offer was submitted by a corporation to be formed by Mr. Robert Farley, a well regarded restauranteur. The proposed lease term was 15 years with a 10 year option at fair market value. The base rent for the first five years of the lease was $200,000 per annum, and the security was to be a $100,000 letter of credit. The tenant was to pay a proportionate share of tax escalations.

The second offer was submitted by a corporation known as New York Arena, Inc. The offeror intended to utilize the space once occupied by Windward for a "first quality Sports Bar and restaurant." It sought a 17 year lease and was willing to pay $210,000 per annum for the first two years; $224,700 per annum for the third and fourth years, and $240,429 per annum for the fifth and sixth years of the lease term. This offer did not contain security deposit or tax escalation provisions.

With respect to the two offers, Sturges indicated that, without a computer, he was unable to evaluate whether they were more or less favorable than the sublease with Windward. However, on cross-examination, it was evident to the Court, if not to Mr. Sturges, that the two proposed leases compared favorably to the Windward lease. In both instances, the base rates exceeded the base rates that would have been due under the Windward lease.

Mr. Sturges emphasized that Y & R was most interested in obtaining a credit worthy tenant who was or would be engaged in a respectable business that would reflect well on the building, which was occupied by Y & R. He indicated that he encouraged Brad Mendelson and later a broker identified as Bob Krieger to present Y & R with any reasonable offer. Sturges testified that he did not impose any dollar limitations on the offers to be solicited by the brokers. Sturges testified that Y & R was not interested in maximizing its profit, but was interested in renting to a good, long-term tenant.

Sturges testimony clearly established that Y & R was relying on brokers to present it with offers. Sturges indicated that Y & R never offered the space occupied by Windward to anyone at or below the rental rate paid by Windward. In fact, Sturges was somewhat surprised at the suggestion, noting it was contrary to the practice in the industry.

## III. DISCUSSION

### A. Contingent Claims

■ The Debtors objected to Y & R's claim for $484,292.11 pursuant to section 502(e)(1)(B) of the Bankruptcy Code. That section provides in relevant part:

... the court shall disallow any claim for reimbursement or contribution of any entity that is liable with the debtor on ... the claim of a creditor, to the extent that such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution....

11 U.S.C. § 502(e)(1)(B).

In *In re Hemingway Transport, Inc.*, 105 B.R. 171 (Bankr.D.Mass.1989), this Court recently examined section 502(e)(1)(B) in depth. In order to prevail under section 502(e)(1)(B), the following elements must be established: "1) the claim must be one for reimbursement or contribution; 2) the entity asserting the claim for reimbursement or contribution must be 'liable with debtor;' and 3) the claim must be contingent at the time of allowance or disallowance." *Id.* 105 B.R. at 176–77. *See also In re Wedtech Corp.*, 85 B.R. 285, 289 (S.D.N.Y.1988); *In re Provincetown–Boston Airlines, Inc.*, 72 B.R. 307, 309 (Bankr. M.D.Fla.1987). Despite Y & R's argument that section 502(e)(1)(B) should only apply to entities whose liability with the Debtor is consensual, as opposed to statutory, the Court is convinced that the elements neces-

sary to prevail under section 502(e)(1)(B) are present here, particularly with respect to the Ed Herschenfeld Construction Co. litigation. Clearly, as the Debtors recognize, allowing Y & R to receive payment on the contractors claims (Herschenfeld has filed a claim in these proceedings) without compelling Y & R to make payment on such claims first would subject the Debtors to double liability and result in a possible windfall to Y & R.

### B. Lease Termination Damages

In *W.T. Grant Co.*, 36 B.R. 939 (S.D.N.Y. 1984), a case involving an objection by a trustee to a landlord's proof of claim, the court stated:

> The Act itself does not provide a formula for ascertaining the appropriate measure of damages. *E.g., In re Crawford Clothes, Inc.*, 434 F.2d 399, 402 (2d Cir. 1970); *C.D. Stimpson Co. v. Porter*, 195 F.2d 410, 413 (10th Cir.1952). Therefore, absent a specific damage provision in a lease, courts apply the rule enunciated by the Supreme Court in *City Bank Farmers Trust Co. v. Irving Trust Co.*, 299 U.S. 433, 57 S.Ct. 292, 81 L.Ed. 324 (1937), i.e., that the measure of damages which the landlord may recover as a result of the tenant's breach is "the difference between the rental value of the remainder of the term and the rent reserved, both discounted to present worth." *Id.* at 443, 57 S.Ct. at 297; *see Kuehner v. Irving Trust Co.*, 299 U.S. 445, 450, 57 S.Ct. 298, 301, 81 L.Ed. 340 (1937). Thus, the landlord may recover only actual damages suffered as a result of the tenant's breach. *C.D. Stimpson Co. v. Porter*, 195 F.2d at 413; *see In re D.H. Overmyer Co., Inc.*, 10 C.B.C. 17, 22 (Bankr.S.D.N.Y.1976) (construing section 353 of chapter XI); 3A Collier on Bankruptcy 63.33[2.4], at 1946 (14th ed. 1975).

*Id.* at 941–42 (footnote omitted). In the *Grant* case, the district court affirmed a bankruptcy court's determination that a liquidated damages provision had "no applicability when the alleged default resulted from the initiation of bankruptcy proceedings." *Id.* at 942. The district court concluded that since no specific damage provision in the lease controlled, the federally created rule should apply. *Id. See also D.H. Overmyer Co., Inc. v. Irving Trust Co.*, 60 B.R. 391 (S.D.N.Y.1986).

With respect to Y & R's claim for liquidated damages, the Court notes that there was no evidence introduced to show how Y & R arrived at the figure of $433,823 for damages. Article XXI of the sublease provides in relevant part:

> 21.01 In the event of a Default Termination of this Lease, Tenant will pay to Landlord as damages at the election of Landlord, either:
>
> (a) a sum which at the time of such Default Termination represents the then value of the excess if any, of (1) the aggregate of the Rent which would have been payable hereunder by Tenant for the period commencing with the day following the date of such Default Termination and ending with the date hereinbefore set for the expiration of the full term hereby granted, over (2) the aggregate rental value of the Premises for the same period, or
>
> (b) sums equal to the aggregate of the Rent which would have been payable by Tenant had this Lease not terminated by such Default Termination, payable upon the due date therefor specified herein following such Default Termination and until the date hereinbefore set for the expiration of the full term hereby granted; provided, however, that if Landlord shall relet all or any part of the Premises for all or any part of said period, Landlord shall credit Tenant with the net rents received by Landlord from such reletting, such net rents to be determined by first deducting from the gross rents as and when received by Landlord from such reletting the expenses incurred or paid by Landlord in terminating this Lease and of re-entering the Premises and of securing possession thereof, as well as the expenses of reletting, including altering an preparing the Premises for new tenants, brokers' commissions and all other expenses properly chargeable against the Premises and the term

of the Lease and the rental therefrom in connection with such reletting, it being understood that any such reletting may be for a period equal to or shorter or longer than said period. . . .

In sum, the first approach toward damages under the sublease is similar to the federal rule and the second permits Y & R to collect the rent as it becomes due, subject to a credit if the premises are relet. Nowhere, in Y & R's memorandum does it explicitly state that it is seeking damages pursuant to subsection (a) or (b), although it urges the Court to follow *Matter of Eagle Clothes, Inc.*, 18 B.R. 298 (Bankr.S. D.N.Y.1982). In that case, which parenthetically is completely opposite to the instant case since the debtor was the lessor, the court stated: "[a] 'primary source' for measuring damages is the covenant of the parties, 'if damages or indemnity are not based on rejection.' A liquidated damage clause in a lease fixes the amount of the damages." 18 B.R. at 300 (citations and footnote omitted).

Although the Court ruled that Y & R's amendment to its proof of claim was untimely, reference to the amended proof of claim is helpful because it reveals that Y & R appears to be "measuring" its damages at least in part with reference to section 502(b)(6) of the Bankruptcy Code. That section, however, is not a measure but a limitation on damages. As explained by *Collier*, section 502(b)(6) of the Bankruptcy Code provides:

[T]he allowable claim of a landlord for purposes of eligibility to share in the distribution of the debtor's assets is the rent reserved by the lease, without acceleration, for either one year or 15 percent not to exceed three years of the remaining period of the lease following either the date the petition was filed by the lessee debtor or the date on which either the landlord took possession of the premises or the lessee surrendered the property, whichever is earlier. In addition, the landlord's allowable claim under the section is for any unaccelerated unpaid rent due under the lease on the earlier of the date of the filing of the petition or the date on which the landlord repossessed

or the property was surrendered. But in all events, the burden is upon the landlord to show the damages resulting from the termination of the lease. Upon such showing, the landlord's allowable claim is limited to the formula described in section 502(b)(6)(A) and, under sub-paragraph (B) of the section, any unpaid rent which was due under the lease, on the earlier of the dates described in subparagraph (A).

4 *Collier on Bankruptcy* ¶ 502.02 at 502–61–62 (15th ed. 1989). Parenthetically, the Debtors and Y & R are in agreement that the post-repossession damages calculated at the reserved rent for 15 percent of the period from February 15, 1988 through January 13, 2001 is approximately $362,-700.

█ It is well settled that a properly executed and filed proof of claim is prima facie evidence of the validity and amount of the claim. Bankruptcy Rule 3001(f); 11 U.S.C. § 502(a). A party objecting to a proof of claim bears the initial burden of producing evidence to defeat the claim. However, the ultimate burden of persuasion rests upon the claimant to prove its claim by a preponderance of the evidence. *See In re BRI Corp.*, 88 B.R. 71 (Bankr.E. D.Pa.1988).

█ Since Y & R failed to present evidence as to how it calculated its claim for $433,823 (Mr. Sturges was not asked to review the proof of claim during the hearing), the Court will utilize the federal rule which provides that the measure of damages is the difference between the present lease value for the remainder of the term and the present fair rental value for the remainder of the term both discounted to present value. *See City Bank Farmers Trust Co. v. Irving Trust Co.*, 299 U.S. 433, 57 S.Ct. 292, 81 L.Ed. 324 (1937); *In re Good Hope Industries, Inc.*, 16 B.R. 702 (Bankr.D.Mass.1982); *In re Fernandes Supermarkets, Inc.*, 1 B.R. 249 (Bankr.D. Mass.1979). Using this formula, the Court is unable to find that Y & R sustained its burden of ultimate persuasion. Although Mr. Sturges alluded to a soft market for

the rental of retail space and the to-date fruitless effort of Y & R to relet the premises, that testimony falls far short of what is needed. Indeed, based upon the two offers that were introduced as exhibits, the Court could just as easily conclude that Y & R will at some point be able to sublet the premises without suffering any actual damages and perhaps even make a profit. Accordingly, the Court rules that the Debtors' objection to the claim is sustained and that Y & R's claim must be disallowed as to the amounts it seeks for contingent claims by suppliers of services and materials and for damages stemming from the default termination.

The Court submits this memorandum in accordance with the order dated September 29, 1989.